THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SANA-
TONE MOSS, Defendant-Appellant.

First District (4th Division)   No. 1—92—3988

Opinion filed September 29, 1995.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Peter Fischer, and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Following a jury trial, the defendant, Sanatone Moss, was

convicted of aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(b)(1)) and sentenced to an extended prison term of 60 years. (See Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(b)(1).) The defendant now appeals, challenging (1) the constitutionality of section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 115—10), under the confrontation clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 8), (2) the reliability of statements made by an unavailable declarant which were admitted under section 115—10, (3) whether such testimony was cumulative, (4) the court's refusal to instruct the jury on the offense of aggravated criminal sexual abuse, and (5) whether the trial court properly sentenced him to an extended prison term of 60 years. We hold that section 115—10 does not violate the Illinois Constitution, that the trial court did not abuse its discretion in finding that certain hearsay testimony had sufficient indicia of reliability, and that such testimony was not cumulative. We also conclude that the trial court did not err in refusing the defendant's instruction on aggravated criminal sexual abuse. Finally, the court did not err in sentencing the defendant to an extended term of 60 years in prison. Therefore, we affirm.

Sanatone Moss was charged by indictment with having committed aggravated criminal sexual assault against Diandra Jones. Prior to trial, the court held a hearing pursuant to section 115—10(b)(1) of the Code of Criminal Procedure to determine the admissibility of certain out-of-court statements made by Diandra. The parties stipulated that Diandra was unavailable for trial because she died in November of 1991. The court ruled that the testimony of Matthew Joseph Warner, Diandra's brother, was admissible under section 115—10, as well as traditional hearsay exceptions. The court found Officer Steven Martin's testimony admissible on the same grounds.

With respect to Dr. Kinga Jokay, the emergency room doctor who examined Diandra immediately following the assault, the court ruled that her testimony was admissible under section 115—10, as well as the physician-patient exception. (See Ill. Rev. Stat. 1991, ch. 38, par. 115—13.) Finally, the court ruled that Diandra's statements to Sergeant Edward Griffin were admissible under section 115—10.

At trial, Matthew testified that on December 2, 1990, he lived with his sister, Diandra Jones, his younger brother Troy, and his mother, Emma Renee Jones. He stated that Diandra was 10 years old, Troy was eight months old, and he was 12 years old at the time. He testified that the defendant, his mother's ex-boyfriend, arrived at the apartment on December 2, at noon.

Around 4 p.m. that afternoon, Emma left the apartment to visit a neighbor, leaving the defendant alone with the children. Matthew

stated that while he was watching television in the living room, the defendant twice sent him out of the room to change his clothes. Diandra was also in the living room. Matthew testified that he heard Diandra repeatedly ask the defendant to leave. Matthew could also hear the defendant talking, but he did not hear what was being said.

At approximately 4:45 p.m., Matthew heard the defendant tell Diandra that he would leave if she would go into the back bedroom to retrieve his jacket and a cigarette lighter. Matthew testified that Diandra went into the back bedroom, but then returned to the living room. The defendant sent Diandra to the back bedroom for a second time. Thereafter, the defendant announced that he was going to retrieve the items himself, and left the living room. Meanwhile, Matthew continued to watch television in the living room. He did not hear any screams from the bedroom.

After about 20 minutes had passed, Matthew left the apartment to look for Diandra because he thought that she might have left. When he came back into the apartment, he saw Diandra running from the bedroom, crying and yelling "leave me alone." As Diandra attempted to run out of the front door of the apartment, the defendant held the door closed, and the two struggled while Matthew stood nearby.

According to Matthew, Diandra began calling out for her mother. Emma then forced her way into the apartment. Diandra twice declared, "He tried to have sex with me." Matthew described Diandra as hysterical and very scared. He further testified that when his mother went to call the police, Diandra went into the bathroom and called out for her mother. She later told Matthew that she had discovered a white substance on her body. After the police arrived, Diandra and her mother went to the hospital. Finally, Matthew testified that Diandra and his mother are dead.

Next, Officer Steven Martin testified that on December 2, 1990, he and his partner arrived at the victim's apartment around 5:45 p.m. He stated that Diandra appeared to be emotionally distressed when he arrived.

Martin testified that he asked Diandra to explain what had happened in the apartment. Martin's testimony concerning Diandra's statements was essentially similar to the account given by Matthew. Diandra also told Martin that the defendant threatened to kill her if she said anything to anyone. Martin further testified that Diandra told him that the defendant "made intercourse." He testified that she told him that when her mother confronted the defendant, he denied any misconduct. Emma and the defendant then argued and the defendant left. Martin testified that he then took Diandra and Emma to Wyler's Children's Hospital.

Dr. Kinga Jokay, an expert in emergency medicine in pediatrics, also testified on behalf of the prosecution. Dr. Jokay stated that she was a resident working in the emergency room of Wyler's Children's Hospital on December 2, 1990. Dr. Jokay testified that Diandra told her that she had been coaxed into a bedroom by her mother's ex-boyfriend. Diandra also told Dr. Jokay that the defendant "[t]ried to have sex" with her and that she thought that he was intoxicated. Dr. Jokay testified that Diandra informed her that there was contact between their genitals and that the defendant ejaculated on her.

Dr. Jokay found Diandra's hymen to be intact and there was no trauma to the vagina. She also testified that the absence of bruises does not mean that a sexual assault did not occur. Dr. Jokay observed a dried white secretion on Diandra's abdomen, inner thighs and external genitalia, which she believed to be sperm. Dr. Jokay then took cultures from Diandra's body and sent them to a lab. Later that evening, a lab technician called her at the emergency room and told her that Diandra's urine contained sperm. Thereafter, Dr. Jokay learned that Diandra's vaginal swab which was sent to the hospital lab tested positive for sperm. Finally, Dr. Jokay testified that based on her observations, tests and examination of Diandra, she was convinced that Diandra was a victim of sexual assault.

Pamela Fish, an expert in serology for the Chicago Police Crime Lab, testified that Diandra's external vaginal smear showed the presence of sperm. Fish sent the smear to California so that DNA testing could be performed. The parties stipulated that Jennifer Mihalovich, an expert in serology employed at Forensic Science Associates in California, would testify that she was unable to conduct a full DNA analysis of Diandra's vaginal smear because there was an insufficient amount of sperm in the sample.

Finally, Sergeant Edward Griffin testified that on December 2, 1990, he met Diandra and Emma Jones at the hospital at approximately 8:30 p.m. He indicated that he briefly spoke with Emma first, outside of Diandra's presence. Griffin then interviewed Diandra, but Emma did not participate in the conversation.

Griffin described Diandra as appearing to be very anxious, nervous and frightened. His testimony concerning Diandra's statements to him was essentially similar to that of the other witnesses. Diandra further told Griffin that after her mother left the apartment that afternoon, the defendant began asking her questions of a sexual nature. Diandra also said that the defendant had intercourse with her, which she defined as having sex. Griffin explained that he did not question her further regarding her meaning of "intercourse" due to her young age.

Griffin also testified that after the defendant was arrested and informed of his rights, he admitted that he had gone to Emma Jones' apartment on December 2, 1990. The defendant further stated that he and Emma drank, smoked PCP and later had intercourse. The defendant told Griffin that he was so high and intoxicated that he could not remember what else happened that day. Finally, Diandra's birth certificate showed that she was born on February 21, 1980.

At the instruction conference, the trial court sustained the State's objection to the defendant's request that the jury be instructed on aggravated criminal sexual abuse. The jury found the defendant guilty of aggravated criminal sexual assault.

At the sentencing hearing, Magnolia Williams testified that she is the mother of the defendant's two children. On January 19, 1987, when Williams told the defendant that she wanted to end their relationship, he beat her and stabbed her repeatedly in her arm and chest. As a result, the defendant was convicted of aggravated battery and sentenced to five years in prison. Williams described her eight-year relationship with the defendant as abusive.

Next, Alvina Anderson testified that on April 30, 1987, when she was 15 years old, the defendant committed aggravated criminal sexual assault and armed robbery against her. Subsequently, he was sentenced to six years in prison, to run concurrently with the aggravated battery sentence of five years. The court also learned that the defendant was convicted of battery in 1985 and 1986. Ultimately, the trial court imposed the maximum extended-term sentence of 60 years in prison.

The defendant first argues that the trial court's admission of hearsay testimony under section 115—10 violated the confrontation clause of the Illinois Constitution. (Ill. Const. 1970, art. I, § 8.) The defendant acknowledges that he did not raise the issue at trial and that he only generally challenged the constitutionality of section 115—10 in his post-trial motion. Nonetheless, we choose to address the merits of the issue.

■ The Illinois Constitution of 1970 provides:

"In criminal prosecutions, the accused shall have the right to appear and defend in person and by counsel; to demand the nature and cause of the accusation and have a copy thereof; *to meet the witnesses face to face* and to have process to compel the attendance of witnesses in his behalf; and to have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." (Emphasis added.) Ill. Const. 1970, art. I, § 8.

The defendant contends that the phrase "to meet the witnesses

face to face" includes the opportunity to meet an unavailable declarant according to the Illinois Supreme Court's decision in *People v. Fitzpatrick* (1994), 158 Ill. 2d 360, 633 N.E.2d 685. In *Fitzpatrick*, the defendant argued that he had a "right to face a witness during testimony." (*Fitzpatrick*, 158 Ill. 2d at 364, 633 N.E.2d at 687.) The court there held that a witness who, pursuant to the child shield act (Ill. Rev. Stat. 1991, ch. 38, par. 106B—1), testified via closed circuit television outside of the defendant's presence deprived the defendant of the face-to-face meeting required by the Illinois Constitution. In holding the child shield act unconstitutional, the court stated that "[t]he language in the Illinois Constitution confers an express and unqualified right to a face-to-face confrontation with witnesses." *Fitzpatrick*, 158 Ill. 2d at 365, 633 N.E.2d at 687.

■ A witness is defined as:

"In general, one who, being present, personally sees or perceives a thing; a beholder, spectator, or eyewitness. One who is called to testify before a court. [Citation.] One who testifies to what he has seen, heard, or otherwise observed." Black's Law Dictionary 1603 (6th ed. 1990).

Here, Matthew Warner, Officer Martin, Sergeant Griffin and Dr. Kinga Jokay all testified in the presence of the defendant. As such, the defendant here met the prosecution's witnesses face to face, as required by the confrontation clause of the Illinois Constitution of 1970. The parties stipulated that the victim, Diandra Jones, was unavailable because she was deceased. Therefore, Diandra was not a "witness" in the trial against the defendant.

■ Additionally, the defendant argues that the confrontation clause of the Illinois Constitution affords a defendant greater rights than the United States Constitution and that this is shown by extrapolating from the holding in *Fitzpatrick*. However, we are faced with an entirely different issue from *Fitzpatrick*, namely, whether the Illinois Constitution requires that a defendant meet an unavailable, out-of-court declarant face to face.

If we construed article I, section 8, of the Illinois Constitution as the defendant suggests, then we would be doing away with an entire range of traditional hearsay exceptions where the witness is unavailable to testify at trial. The defendant proposes that we only limit the testimony concerning the statements of an unavailable declarant under statutory schemes such as section 115—10. However, he offers no basis for this limitation and fails to explain why we should draw the line at prohibiting the testimony of unavailable declarants under section 115—10, but continue to allow such testimony under the traditional hearsay exceptions. We determine that the Illinois Constitution does not require such a result.

We conclude that based on our supreme court's analysis of the confrontation clause of the Illinois Constitution, the general meaning of the word "witness" and principles of statutory construction, section 115—10 does not offend the principles of the confrontation clause of the Illinois Constitution.

The defendant concedes that the testimony of Matthew Warner, the victim's brother, had some basis in traditional exceptions to the hearsay rule and that it had sufficient indicia of reliability under section 115—10. However, he challenges the propriety of the court's decision to allow the testimony of Officer Martin, Dr. Kinga Jokay and Sergeant Griffin.

We review the trial court's findings under section 115—10 under an abuse-of-discretion standard. (*People v. Zwart* (1992), 151 Ill. 2d 37, 600 N.E.2d 1169.) Under section 115—10(b), testimony of an unavailable child shall be admitted only if the court finds that the time, content and circumstances of the statement provide the sufficient safeguards of reliability. (Ill. Rev. Stat. 1991, ch. 38, par. 115—10(b).) The trial court has considerable leeway in considering the appropriate factors in evaluating the totality of the circumstances surrounding a victim's statements. *People v. McMillan* (1992), 231 Ill. App. 3d 1022, 597 N.E.2d 923.

■ First, with respect to Officer Martin, the defendant argues that his testimony should have been excluded under section 115—10 based on the passage of time between the assault and the officer's arrival, the presence of Diandra's mother, Diandra's use of technically proper terms such as "intercourse" and Martin's questioning of Diandra.

We find that approximately one hour had passed between the assault and Martin's arrival. Further, although Emma was present when Martin spoke with Diandra, there is no evidence in the record that she participated in the conversation at all or coached Diandra in any way. Also, under the circumstances, it is not unusual that a 10-year old would use the word "intercourse" to describe the defendant's actions. Finally, the officer testified that he asked Diandra if she could tell him what happened in her own words. We find that Martin did not question Diandra in a suggestive manner. See *People v. Anderson* (1992), 225 Ill. App. 3d 636, 587 N.E.2d 1050 (statements made in response to questions do not render them inadmissible under section 115—10).

At the hearing, the court found that Martin's testimony had the sufficient safeguard of reliability and that there was corroborative evidence of the assault as required under section 115—10(b)(2)(B). (Ill. Rev. Stat. 1991, ch. 38, par. 115—10(b)(2)(B).) Based on our findings

above, we find that the trial court did not abuse its discretion in finding that Martin's testimony had sufficient indicia of reliability.

■ We also reject the defendant's argument that the trial court abused its discretion in permitting the testimony of Sergeant Griffin. Griffin specifically testified that when he first spoke with Diandra's mother, Diandra was in another room, with the door closed. Further, Emma did not participate in Griffin's conversation with Diandra.

■ Finally, with respect to the testimony of Dr. Kinga Jokay, the defendant argues that by the time Diandra spoke to Dr. Jokay, she already had made outcries to her family and Officer Martin. He also states that Dr. Jokay asked Diandra questions and that, given these factors, her testimony was not sufficiently reliable under section 115—10.

We determine that Diandra's statements to Dr. Jokay are not rendered unreliable merely because she had already related the story to her mother and brother. The record shows that Dr. Jokay did not improperly elicit answers based on suggestive questions; rather, she asked Diandra why she came to the hospital. Under the circumstances, we conclude that the trial court did not abuse its discretion in finding that Diandra's statements to Dr. Jokay had sufficient indicia of reliability.

■ The defendant further argues that he is entitled to a new trial because the trial court did not realize that it had the discretion to limit the number of prosecution witnesses who gave testimony pursuant to section 115—10. On appeal, the defendant does not identify the witnesses who should not have testified, but at the section 115—10 hearing he only objected to the testimony of Griffin and Assistant State's Attorney Perkaus, who did not testify. At oral argument he suggested that we should hold that under section 115—10, the testimony of only one witness should be permitted until that witness' credibility is challenged. We cannot accept the defendant's proposition.

Section 115—10 contains no limitation on the number of witnesses who may testify. We will not limit the corroborating complaint testimony to one witness. See *People v. Branch* (1987), 158 Ill. App. 3d 338, 511 N.E.2d 872; *Anderson*, 225 Ill. App. 3d 636, 587 N.E.2d 1050.

Further, we agree with the premise that in a more closely balanced case, a new trial might be warranted if it appears that "the delicate scales of justice have been unfairly tilted by the sheer weight of repetition." (*Anderson*, 225 Ill. App. 3d at 648.) However, the evidence in the present case, including the results of the medical tests indicating the presence of sperm on 10-year-old Diandra's body and

the detailed testimony of her brother Matthew, shows that this was not a closely balanced case. Furthermore, the prosecution has an obligation to prove a defendant guilty beyond a reasonable doubt. As such, we find that the defendant's argument that he is entitled to a new trial because the testimony at trial was cumulative fails.

■ The defendant also maintains that he should be given a new trial because the trial court erred when it sustained the prosecution's objection to the defendant's request that the jury be instructed on the offense of aggravated criminal sexual abuse (Ill. Rev. Stat. 1991, ch. 38, par. 12—16(c)(1)), as well as aggravated criminal sexual assault. We find that the Illinois Supreme Court decision in *People v. Novak* (1994), 163 Ill. 2d 93, 643 N.E.2d 762, controls this issue. In *Novak*, our supreme court held if the lesser-included offense is described in the charging instrument, then the jury must be instructed on the offense. *Novak*, 163 Ill. 2d at 112, 643 N.E.2d at 772.

The indictment in the present case specifically charges the accused with an act of "penetration," which means "any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person." (Ill. Rev. Stat. 1991, ch. 38, par. 12—12(f).) Nothing in the indictment here refers to sexual gratification or arousal of Diandra or the defendant, which is an element of the offense of criminal sexual abuse. (See *Novak*, 163 Ill. 2d at 114, 643 N.E.2d at 773.) Sexual conduct and sexual penetration as defined by the Code of Criminal Procedure are two different types of conduct. Furthermore, no evidence was presented concerning the elements of aggravated criminal sexual abuse.

We determine that the indictment here "does not describe the foundation or main outline of aggravated criminal sexual abuse." (*Novak*, 163 Ill. 2d at 114, 643 N.E.2d at 773.) Given the indictment and elements of criminal sexual abuse, as well as the evidence assessed at trial, we conclude that the trial court properly refused to instruct the jury on aggravated criminal sexual abuse.

■ Finally, the defendant challenges the court's decision to impose an extended-term prison sentence. He admits, however, that he was eligible for an extended-term sentence based on his prior Class X felony convictions. On appeal, he merely argues that the court erred because his crime was not brutal and heinous.

Where a defendant admits eligibility for an extended term on the grounds that he was a convicted felon, the appellate court will not address an argument that the court abused its discretion by relying on the brutality or heinousness of the offense in imposing an extended term. (*People v. Gross* (1994), 265 Ill. App. 3d 74, 637 N.E.2d 789.) As

such, we will not address the defendant's argument here that his crime was not exceptionally brutal or heinous.

Sentencing is a matter of sound judicial discretion and, absent an abuse of discretion, a sentence imposed by a trial court may not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 884.) The trial court has a better opportunity to consider various factors in constructing an appropriate sentence. (*Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884.) The abuse-of-discretion standard also applies when determining whether a court properly found a defendant eligible for an extended-term sentence. See *Gross*, 265 Ill. App. 3d at 78, 637 N.E.2d at 792.

In 1985 and 1986, the defendant was convicted of two batteries. Then, in 1987, he committed aggravated battery against the mother of his children by stabbing her repeatedly in the arm and chest, requiring her to be hospitalized. Later that same year, he committed aggravated criminal sexual assault and armed robbery against a 15-year-old girl by assaulting her vaginally and orally three times, beating her repeatedly and then taking $1.15 from her pocket. For his 1987 crimes, he was sentenced to terms of five and six years respectively, which ran concurrently. By 1991, the defendant had committed another aggravated criminal sexual assault, this time against 10-year-old Diandra Jones. The trial court considered all of these factors when sentencing the defendant.

Given the defendant's history as a violent, recidivist criminal, we cannot say that the trial court abused its discretion in imposing the maximum extended-term sentence.

Accordingly, we affirm the verdict as well as the defendant's sentence.

Affirmed.

HOFFMAN, P.J., and CAHILL, J., concur.