7 December 1999

No. 3--98--0472

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1999

THE PEOPLE OF THE ) Appeal from the Circuit Court

STATE OF ILLINOIS )    of the 14th Judicial Circuit

) Rock Island County, Illinois

Plaintiff-Appellee, )

) 

    v. ) No. 97--CF--556

) 

NASHAUN B. QUICK, ) Honorable

) J. Donald O'Shea

Defendant-Appellant. ) Judge Presiding

_________________________________________________________________

JUSTICE HOMER delivered the opinion of the court:

_________________________________________________________________

The defendant, Nashaun Quick, was convicted by a jury of first degree murder (720 ILCS 5/9--1(a)(3) (West 1996)) and was sentenced to natural life in prison without the possibility of parole.  On appeal, he contends that: (1) 
the trial court erred in allowing the statements of his alleged accomplices to be used at trial; (2) the State failed to prove the defendant's guilt beyond a reasonable doubt; (3) the trial court erred in failing to grant him a new trial because a key witness altered her testimony in the  trial of an accomplice; (4) the trial court erred in failing to grant him a new trial as a sanction against the State for its failure to comply with discovery rules; and (5) the trial court abused its discretion in sentencing the defendant to natural life in prison.  For the reasons that follow, we  reverse the defendant's conviction  and remand this cause for a new trial.

FACTS

Derrick Rhoden, Jeremiah Jamison, and the 19-year-old defendant were accused of participating in the June 11, 1997, murder of Paul Foster.  Rhoden and Jamison were given immunity in exchange for their testimony in the defendant's case.

Jamison told police in a tape-recorded statement that he, along with Rhoden and the defendant, had been involved in a fight with members of the Gangster Disciples on the day of the murder, and that the three of them returned to the victim's home later that night to scare members of the gang.  Once there, they decided to shoot at the victim's house.  Jamison told police that the defendant was the shooter. 

Rhoden gave a similar taped statement to the police.  He specified that the defendant began shooting at the victim's house while standing on a sidewalk near the front of the house.  According to Rhoden, the defendant shot a 9-millimeter black gun five or six times into the front of the house as he walked east.

In fact, numerous bullet holes were found in the front (south side) of the house and 11 spent 9-millimeter shell casings were discovered in that location.  In addition, a 9-millimeter slug was recovered from the victim's body which was found in a bedroom in the southwest corner of the house.  

The victim's girlfriend, Mae MacQuieter, testified that she was sleeping on a couch in the victim's home at about 1:30 a.m. on June 11, 1997, when she was awakened by several gunshots.  When the shots stopped, she went into the bedroom and found the victim on the floor with blood on his chest.  The victim died as a result of the shooting. 

After receiving grants of immunity, Jamison and Rhoden were called to testify for the State.  At trial, Jamison  recanted the statement he had given to the police and testified that he had not participated in the crime.  Rhoden refused to answer any questions at trial.  Over the defendant's objections, Jamison's taped statement and the referenced portion of Rhoden's were admitted into evidence. 

Officer Harder of the Rock Island police department testified that he responded to a report of a fight near the victim's residence on the afternoon of the day preceding the shooting.  He observed the defendant with a bloodied lip and "in a fit of rage."

The defendant theorized at trial that a Charles Davis and members of Davis' gang committed the murder due to a dispute with the victim over the selling of drugs from the victim's house.  This theory was based, at least in part, upon a discussion his counsel had prior to trial with Officer Poulos of the Rock Island police department.  A memo (the Poulos memo), prepared by Poulos prior to this meeting, was not provided to counsel until the third day of trial.  

At their meeting, Poulos informed counsel that the victim had met with him the day of the murder.  The victim told Poulos that he feared for his life because he was being threatened by Charles Davis.  The actual Poulos memo revealed also that a confidential informant had reported to Officer Poulos that a woman named Mary Fender had told him that Charles Davis and Terrance Brannigan committed the murder.

Upon receiving the Poulos memo, the defendant claimed surprise and moved for a mistrial.  The court denied the motion, but granted the defendant a two-week continuance.  As an additional sanction, the court allowed the memo to be introduced by the defense as evidence.  

When the trial resumed, the defendant called a number of witnesses, including three alibi witnesses.  In addition, a neighbor of the victim testified that the victim was concerned about activity near his home, and a police officer testified that there was a lot of drug dealing in the area surrounding the victim's home.

The defendant also called Charles Davis to the stand.  Davis denied being involved in the murder of the victim, but admitted that he was involved in a fight near the victim's residence on the afternoon of the murder.  Mary Fender also testified and denied ever saying that Davis and Brannigan committed the murder.

At the close of the case, the jury found the defendant guilty of first degree murder.  About two weeks after trial, defense counsel was advised by the State that there were other interviews, documents, and memos that were inadvertently not disclosed.  After the documents in question were revealed to the defendant, he filed motions for judgment notwithstanding the verdict and for a new trial.  The court denied the motions.

The defendant was sentenced to natural life in prison and this appeal followed.

ANALYSIS

I. Admissibility of  Accomplices' Statements 

We first consider the defendant's contention that the trial court erred in allowing the State to introduce portions of Rhoden's taped statement.
(footnote: 1)  The defendant argues that he was denied a fair trial because (1) the statement lacked sufficient indicia of reliability to qualify for admission under section 115--10.2 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115--10.2 (West 1998)), and (2) the admission of the statement violated his constitutional right to confront witnesses against him (U.S. Const., amend VI; Ill. Const. 1970, art. I, §8).  These are interrelated issues.

In 1996, the Illinois General Assembly addressed the issue of the admissibility of extrajudicial statements of reluctant witnesses in criminal cases.  The resulting legislation, contained in section 115--10.2 of the Code, provides in relevant part as follows:

"(a) A statement not specifically covered by any other hearsay exception but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule if the declarant is unavailable as defined in subsection (c) and if the court determines that: 

(1) the statement is offered as evidence of a material fact; and

(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts[.] ***

***

(c) Unavailability as a witness is limited to the situation in which the declarant persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so."  725 ILCS 5/115--10.2 (West 1998).

The provisions of section 115--10.2 were included in the first conference committee report to House Bill 1249.  During floor debate, Representative Durkin explained:

"[T]hrough this Amendment, we have adopted the federal rule of evidence, particularly, 804(b)5 [Fed. R. Evid. 804(b)(5) (transferred to Fed. R. Evid. 807).], which is commonly known as the residual hearsay exception.  The federal rule has been in place for approximately  20 years, which specifically it [
sic
] states that certain statements by witnesses will be admitted as substantive evidence in a state's case in chief, despite the fact that there has been no confrontation if there are individual guarantees of trustworthiness."  89th Ill. Gen. Assem., House Proceedings, May 24, 1996, at 5 (statements of Representative Durkin).

In the instant action, Rhoden was "unavailable" within the meaning of section 115-10.2(c) of the Code (725 ILCS 5/115-

10.2(c) (West 1996)), because after he was granted immunity in exchange for his testimony, he refused to testify.  Further, Rhoden's statement was offered as evidence of material facts in that it described the shooting, placed the gun in the defendant's hand, and specified the type of gun that was used to commit the murder.  See 725 ILCS 5/115--10.2(a)(1) (West 1996).  His statement was also the most probative evidence of the defendant's guilt because it was the most detailed eyewitness report of the circumstances that gave rise to the victim's death.  See 725 ILCS 5/115--10.2(a)(2) (West 1996).

However, in order for Rhoden's hearsay statement to be admissible, it must also be found to possess sufficient "circumstantial guarantees of trustworthiness."  725 ILCS 5/115-

-10.2 (West 1998).  Our analysis in this regard must begin and end with an examination of the defendant's rights under the confrontation clause.

The confrontation clause guarantees a defendant the right to confront his accusers and ensures the reliability of evidence against a defendant by subjecting it to rigorous testing in an adversary proceeding.  
Maryland v. Craig
, 497 U.S. 836, 845, 111 L. Ed. 2d 666, 678, 110 S.Ct. 3157, 3163 (1990).  The confrontation clause prohibits the admission of the declarant's hearsay statement inculpating the defendant unless it can be shown that (1) the declarant is unavailable, and (2) his statement bears adequate "indicia of reliability."  
Ohio v. Roberts
, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S.Ct. 2531, 2539 (1980).  Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.  In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.  
Roberts
, 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S.Ct. at 2539.

We first consider whether Rhoden's statement was admitted pursuant to a "firmly rooted hearsay exception."  While the hearsay exception for statements against pecuniary interest is rooted in the English common law, the practice by which the government seeks to introduce the confession of an accomplice which incriminates the accused is "of quite recent vintage."  
Lilly v. Virginia
, 527 U.S. ___, ___, 144 L. Ed. 2d 117, 130-31, 119 S.Ct. 1887, 1897 (1999).

In 
Lilly
, the defendant and two accomplices, including his brother, were arrested following a two-day crime spree during which they abducted a victim, who was later shot and killed.  The defendant's brother admitted to police that he stole some alcoholic beverages, but he claimed that the defendant committed the murder.  When the State called the brother to testify at the defendant's trial, he invoked his fifth amendment privilege against self-incrimination.  The trial court then admitted the brother's extrajudicial statements as declarations of an unavailable witness against penal interest.  
Lilly
, 527 U.S. at ___, 144 L. Ed. 2d at 125, 119 S.Ct. at 1892-93.

In affirming the defendant's convictions, the Virginia Supreme Court held that the confrontation clause was satisfied because the brother's statement fell within a firmly rooted exception to the hearsay rule.  Further, the Virginia court declared that the brother's statements were otherwise reliable because he knew that he was implicating himself as a participant in several crimes and because the evidence was independently corroborated by other evidence at trial.
  See 
Lilly
, 527 U.S. at ___, 144 L. Ed. 2d at 125, 119 S.Ct. at 1893.

However, the United States Supreme Court reversed
, holding that an accomplice's confession that inculpates a criminal defendant is not within a firmly rooted exception to the hearsay rule as that rule has been defined by the confrontation clause.  
Lilly
, 527 U.S. at __, 144 L. Ed. 2d 133, 119 S.Ct. at 1899.
  The Supreme Court also rejected the notion that the brother's statements were otherwise reliable, noting that the brother had a natural motive to exculpate himself and that his statements were made to the authorities while he was in custody, suspected of criminal misconduct, and under the influence of alcohol.  The Court also remarked that the brother's statements were made in response to leading questions posed by the authorities.
  
Lilly
, 527 U.S. at __, 144 L. Ed. 2d 133, 119 S.Ct. at 1901.

The Supreme Court ruled that to be admissible under the confrontation clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial.  
Lilly
, 527 U.S. at __, 144 L. Ed. 2d 135, 119 S.Ct. at 1901.  An accomplice's statements that shift or spread the blame to a criminal defendant fall outside the realm of hearsay exceptions that are so trustworthy that adversarial testing can be expected to add little to the statements' reliability.  
Lilly
, 527 U.S. at ___, 144 L. Ed. 2d at 132, 119 S.Ct. at 1898.

Notwithstanding these principles of law, the State argues that the circumstances surrounding Rhoden's statement and the nature of the statement itself supplied the necessary inherent trustworthiness.  In support, the State maintains that: (a) Rhoden was not a suspect and was not in custody at the time he gave his statement; (b) he made a self-inculpatory statement; (c) he was not under the influence of alcohol or drugs; (d) the questions put to Rhoden by the police were open-ended and not leading; (e) Rhoden and the defendant belonged to the same gang, eliminating any motive to inculpate the defendant; and (f) only after admitting his own responsibility for the murder, 70 minutes after the questioning began, did Rhoden implicate the defendant.  We disagree with the State's contention that these factors are sufficient to distinguish the instant case from 
Lilly
 and establish the inherent trustworthiness of Rhoden's statement.

Although Rhoden may not have been a suspect or in custody when he was first interrogated at the police station, by the time he inculpated the defendant he would have reasonably believed himself to be a suspect in the shooting.  While Rhoden admitted to police his own role as an accessory to the crime, he identified the defendant as the shooter.  Furthermore, any motivation Rhoden may have had to protect the defendant due to gang affiliation logically provides no more compelling evidence of reliability than the motivation of the brother in 
Lilly
 to protect that defendant.   

The following questions from the police and answers given by Rhoden were read to the jury: 

"Q.  Okay, when did Nashaun start shooting at Paul's house?

A.  When he arrived on the sidewalk.

Q.  Okay, did he walk from the west side of Paul's house on the sidewalk, going towards the east, shooting at the house?

     A.  Yes.

Q.  About how many times did he shoot, if you remember?

A.  About five or six.

Q.  While he was shooting at the house, was he walking along the sidewalk?

A.  Yes.

Q.  All right, who had the gun?

A.  Nashaun Quick.

Q.  What caliber gun was it?

A.  Nine millimeter.

Q.  What color was the gun?

A.  Black."     

The confession of an accomplice inculpating the accused is presumptively unreliable.  
Lee v. Illinois
, 476 U.S. 530, 90 L.Ed.2d 514, 106 S.Ct. 2056 (1986).  Following our careful review, we simply cannot find that Rhoden's hearsay statement possessed sufficient indicia of reliability by virtue of its inherent trustworthiness to justify its admission without the defendant's opportunity for cross-examination.

Because Rhoden's statement was neither admitted pursuant to a firmly rooted hearsay exception nor shown to contain particularized guarantees of trustworthiness, the court erred in admitting it. 

Alternatively, the State argues that even if the admission of Rhoden's statement is considered error, it was harmless error beyond a reasonable doubt.  Confrontation clause errors do not automatically warrant reversal, and a defendant's conviction can be affirmed if the court is able to conclude the error was harmless beyond a reasonable doubt.  
People v. Johnson
, 116 Ill. 2d 13, 28, 506 N.E.2d 563, 570 (1987).  

The State argues that Rhoden's redacted statement was admitted to show only: (1) that a nine-millimeter handgun was used, and (2) that the defendant was walking on the sidewalk near the house as the shooting occurred.  The State points out that the type of gun used and the location of the shooter were otherwise established by the physical evidence.  Hence, the State contends that Rhoden's statement added little to the case against the defendant.  

An examination of the record belies the State's contention.  In his statement, Rhoden identified the defendant as the shooter. That 9-millimeter shell casings were found near the sidewalk in front of the house and a 9-millimeter slug was recovered from the victim's body do not prove that it was the defendant who fired the shots.  The weapon was not recovered, and aside from Rhoden's statement, there was no other evidence linking the defendant to such a weapon or to the location from which the shots were apparently fired.  Further, although Jamison also implicated the defendant as the shooter in his statement to the police, he provided less detail and recanted his statement at trial.  Aside from Jamison's statement, the admissible evidence against the defendant was largely circumstantial.  Therefore, we will not consider the admission of Rhoden's statement as harmless error beyond a reasonable doubt.  

For the reasons stated, we reverse the defendant's conviction and remand this cause for a new trial. 

  II.  Sufficiency of the Evidence

The defendant further contends that his conviction should be reversed outright, because the State failed to prove him guilty of first degree murder beyond a reasonable doubt.  The standard of review for such contention is whether, after viewing the evidence in the light most favorable to the State, any rationale trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985).

The defendant argues that the verdict is not supported by the evidence because the State presented no unbiased third-party witness, the defendant did not confess, and there was no physical evidence linking the defendant to the crime.  Our review of the evidence, however, in the light most favorable to the State, leads us to conclude that it was sufficient to prove the defendant's guilt beyond a reasonable doubt.  Therefore, double jeopardy principles do not bar the State from proceeding against the defendant in a new trial.

Because we remand this cause for a new trial, we find it unnecessary to address the defendant's remaining assignments of error. 

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Rock Island County is reversed and this cause is remanded for a new trial.

 Reversed and remanded. 

HOLDRIDGE, PJ. and SLATER, J., concur.                            

FOOTNOTES
1:
In setting forth his general issue on appeal, the defendant challenges both Jamison's and Rhoden's statements.  However, in his written and oral arguments the defendant addressed only the admissibility of Rhoden's statement.  Therefore, we will not consider the admissibility of Jamison's statement.  See 
People v. McCarthy
, 213 Ill. App. 3d 873, 885, 572 N.E.2d 1219, 1226 (1991) (mere contentions without argument or citation to authority do not merit consideration on appeal).