THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PATRICK LAMAR THOMAS, Defendant-Appellant.

Fourth District   No. 4—98—0918

Opinion filed June 1, 2000.

Daniel D. Yuhas and Matthew J. Maurer, both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 1998, a jury convicted defendant, Patrick Lamar Thomas, of first degree murder (720 ILCS 5/9—1(a)(1) (West 1998)). The trial court later sentenced him to 60 years in prison with credit

for 252 days spent in custody while awaiting trial. Defendant appeals, arguing that (1) section 115—10.2 of the Illinois Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10.2 (West 1998)) is unconstitutional on its face and as applied to defendant; (2) Public Act 89—689 (Act) (Pub. Act 89—689, eff. December 31, 1996 (1996 Ill. Laws 3775)), which enacted section 115—10.2 of the Code, violates the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)); (3) the court failed to exercise its discretion when, during jury deliberations, it allowed transcribed testimony to be read to the jury under the belief that it was obligated to do so; (4) his sentence is excessive; and (5) he is entitled to an additional 56 days of credit against his sentence for time he served in a Georgia prison awaiting extradition to Illinois. We affirm and remand with directions.

## I. BACKGROUND

At defendant's September 1998 jury trial, Stanetta Hughes testified that in April 1997 she was engaged to be married to James Betts, the victim in this case. Hughes and Betts were staying at the Budgetel Inn in Champaign, where Hughes worked as a housekeeper. On the morning of April 5, 1997, she saw defendant and Betts conversing in the hallway. Defendant raised his arm, and Hughes heard a gunshot and saw Betts fall to the floor.

Betts died from a gunshot wound to the head. The gun that was used to kill Betts was found in a tool room at Sullivan Chevrolet (Sullivan), a car dealership immediately to the east of the Budgetel Inn. James Shirley, a service technician at Sullivan, saw a black male walk through the repair shop on the morning of April 5, 1997. John Wakely, also a service technician at Sullivan, observed a black male run from the side of the Sullivan building to a vehicle at a nearby intersection. The man got in the car, and it drove on.

Outside the presence of the jury, the trial court held a hearing to determine whether defendant's aunt, Gladys Bishop, was "unavailable" to testify pursuant to section 115—10.2 of the Code (725 ILCS 5/115—10.2 (West 1998)). After taking the oath, Bishop refused to testify out of fear for her safety. The court ordered her to testify but she continued to refuse.

The State subsequently sought to introduce into evidence a transcript of Bishop's interview with Champaign police detective Donald Shepard. Shepard's interview had been tape-recorded and was later transcribed. After a hearing, the trial court found that the Bishop transcript met the requirements of section 115—10.2 and allowed Shepard to read it during his testimony.

A summary of the Bishop transcript follows. On the morning of

April 5, 1997, defendant called Bishop shortly after 7 and told her to pick him up at the Budgetel Inn at about 10 that morning. Bishop arrived at the motel shortly after 10, parked her car in front of the motel, and went inside. She went to the door of defendant's room but then saw defendant coming down the hallway. Defendant got his bag from inside the room, and they headed toward the front entrance. As they were leaving, Betts was coming in. Betts bumped into defendant and continued down the hall. Defendant followed Betts and a confrontation ensued.

Bishop did not hear the entire conversation between defendant and Betts, but she heard Betts say, "I heard you was the one that shot my boy the other Friday." Defendant said, "I don't know what you talking about." Bishop was looking down when she heard the gunshot. When she looked up, she saw Betts fall to the floor and heard the housekeeper screaming. Defendant ran back toward Bishop, past her, and out the front door of the motel. Bishop then left through the front door, got back into her car, and drove straight to her sister's house.

Betts originally told Shepard that she had not seen defendant since he ran out of the motel. Later in the interview, she changed her story by admitting that, on her way to her sister's house, she turned by Sullivan and saw defendant running through the parking lot. She stopped for him and took him to an apartment complex where his cousin lived. She had not seen him since she dropped him off there. After the State rested, defendant presented no evidence.

During jury deliberations, the jury sent a note to the trial judge asking for a copy of the Bishop transcript. The court, after conferring with the State and defense counsel, had the transcript reread to the jury but did not send a copy of it to the jury room.

The jury convicted defendant of first degree murder, and the trial court sentenced him as stated. This appeal followed.

## II. ANALYSIS

### A. Confrontation Clause Challenge

Defendant first argues that section 115—10.2 of the Code is unconstitutional both on its face and as applied to him. We disagree.

#### 1. *The Constitutionality of Section 115—10.2*

Section 115—10.2 of the Code reads as follows:

"Admissibility of prior statements when witness refused to testify despite a court order to testify.

(a) A statement not specifically covered by any other hearsay exception but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule if the declar-

ant is unavailable as defined in subsection (c) and if the court determines that:

(1) the statement is offered as evidence of a material fact; and

(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) the general purposes of this [s]ection and the interests of justice will best be served by admission of the statement into evidence.

(b) A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement, and the particulars of the statement, including the name and address of the declarant.

(c) Unavailability as a witness is limited to the situation in which the declarant persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so.

(d) A declarant is not unavailable as a witness if exemption, refusal, claim or lack of memory, inability[,] or absence is due to the procurement or wrongdoing of the proponent of a statement for purpose of preventing the witness from attending or testifying.

(e) Nothing in this [s]ection shall render a prior statement inadmissible for purposes of impeachment because the statement was not recorded or otherwise fails to meet the criteria set forth in this [s]ection." 725 ILCS 5/115—10.2 (West 1998).

Section 115—10.2 of the Code is not unconstitutional on its face because evidence that is admissible pursuant to the statute does not necessarily violate the confrontation clause (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8). Hearsay statements can be admitted at trial without violating a defendant's confrontation clause rights if they either (1) fall under a firmly rooted exception to the hearsay rule or (2) possess "particularized guarantees of trustworthiness." *Idaho v. Wright*, 497 U.S. 805, 817, 111 L. Ed. 2d 638, 653, 110 S. Ct. 3139, 3147 (1990). For hearsay testimony to be admissible pursuant to section 115—10.2 of the Code, it must possess "circumstantial guarantees of trustworthiness" equivalent to those ascribed to statements covered by the established exceptions to the hearsay rule. 725 ILCS 5/115—10.2(a) (West 1998). Thus, confrontation clause protections are explicitly incorporated in the text of section 115—10.2(a). 725 ILCS 5/115—10.2(a) (West 1998).

Moreover, in *People v. Campbell*, 309 Ill. App. 3d 423, 721 N.E.2d

1225 (1999), this court held that the hearsay statements admitted in that case pursuant to section 115—10.2 of the Code possessed sufficient guarantees of trustworthiness so as to satisfy the confrontation clause. As discussed below, we reach the same conclusion here.

## 2. The "Unavailable" Witness

■ The term "unavailability" as used in section 115—10.2(c) of the Code is a "term of art," meaning that it has a specific, limited definition for purposes of section 115—10.2. 725 ILCS 5/115—10.2(c) (West 1998). "Unavailability" as used in section 115—10.2 does not mean "unavailability" as that term is used in common speech—that is, a witness who is unavailable to testify because the witness' location is unknown or the witness has died. Unless a witness is "unavailable" as the word is used in section 115—10.2(c)—that is, *the witness persists from the witness stand in refusing to testify concerning the subject matter of the witness' earlier statement despite a court order to do so*—section 115—10.2 simply does not apply at all. See *People v. Drum*, 307 Ill. App. 3d 743, 752, 718 N.E.2d 302, 309 (1999).

This distinction is important because of the unfortunate reference to witness unavailability that appears in *obiter dicta* in *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980), attempting to sketch out a discernable general approach to confrontation clause challenges, and was repeated in *Wright*. In those cases, the Supreme Court wrote that for a proffered hearsay statement to pass constitutional muster in the usual case, "the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Roberts*, 448 U.S. at 65, 65 L. Ed. 2d at 607, 100 S. Ct. at 2538; *Wright*, 497 U.S. at 814, 111 L. Ed. 2d at 651-52, 110 S. Ct. at 3146. As discussed herein, the United States Supreme Court has subsequently—and repeatedly—attempted to make clear that the *Roberts* "requirement of unavailability" should be read as limited to the particular facts of that case, which involved the State's request to use the *previous sworn testimony* of a witness at a preliminary hearing (whom the defendant's counsel had called and questioned) because that witness was unavailable (as the term is used in common speech) at trial.

In *Roberts*, the State invoked at trial an Ohio statute that permitted the use of such testimony when the witness could not be produced to testify. *Roberts*, 448 U.S. at 59, 65 L. Ed. 2d at 603, 100 S. Ct. at 2535. The statute is a partial codification of the *"prior testimony" exception* to the hearsay rule, which by definition does not apply unless the witness is *unavailable, as that term is used in common speech*, despite a party's best efforts to obtain that witness' testimony at trial.

See *Laboy v. Industrial Comm'n*, 74 Ill. 2d 18, 21, 383 N.E.2d 954, 955-56 (1978). Thus, the statement in *Roberts* that "when a hearsay declarant is not present for cross-examination at trial, the [c]onfrontation [c]lause normally requires a showing that he is unavailable" also constitutes *obiter dicta*. *Roberts*, 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2539.

In *White v. Illinois*, 502 U.S. 346, 354, 116 L. Ed. 2d 848, 858, 112 S. Ct. 736, 741 (1992), written two years after *Wright* and 12 years after *Roberts*, the Supreme Court explicitly limited *Roberts* regarding its *dicta* concerning "unavailability" and "clarified" that case as standing "for the proposition that unavailability analysis is a necessary part of the [c]onfrontation [c]lause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding"—which, of course, was the situation in *Roberts* and decidedly not the situation in *Wright*.

The Supreme Court has backed away from the *Roberts obiter dicta* in other cases, as well: *United States v. Inadi*, 475 U.S. 387, 89 L. Ed. 2d 390, 106 S. Ct. 1121 (1986), and *Bourjaily v. United States*, 483 U.S. 171, 97 L. Ed. 2d 144, 107 S. Ct. 2775 (1987). Thus, Professor Michael Graham sums up the current state of the law on this point as follows:

> "In short, *Inadi*, *White*, and *Bourjaily* support an interpretation [that] *** the imposition by the confrontation clause of a requirement of unavailability is required only when the challenged out-of-court statement was made in the course of a prior judicial proceeding. The Illinois Constitution is in accord. *People v. Smith*, 152 Ill. 2d 229, 178 Ill. Dec. 335, 604 N.E.2d 858 (1992). *See also People v. Moss*, 275 Ill. App. 3d 748, 212 Ill. Dec. 40, 656 N.E.2d 193 (1995)." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 807.1, at 901-02 (7th ed. 1999).

Despite the foregoing authority, some courts, including some in Illinois, have continued to repeat the *Roberts obiter dicta* regarding unavailability as if the Supreme Court had not explained it away in *Inadi*, *Bourjaily*, and *White*. For instance, in *People v. Quick*, 308 Ill. App. 3d 474, 479, 720 N.E.2d 1137, 1142 (1999), the Third District Appellate Court cited *Roberts* and spoke of the confrontation clause as prohibiting the admission of the declarant's hearsay statement inculpating the defendant unless it can be shown that "the declarant is unavailable." In *People v. Brown*, 303 Ill. App. 3d 949, 961, 709 N.E.2d 609, 618 (1999), the First District Appellate Court cited *Wright* to support the following observation:

> "Incriminating statements that are admissible under an exception to the rule against hearsay are inadmissible under the confronta-

tion clause unless the State either produces the declarant for cross-examination or demonstrates both that the declarant is unavailable and that the statement bears indicia of reliability." See also Justice Cook's specially concurring opinion in *People v. Peck*, 285 Ill. App. 3d 14, 26, 674 N.E.2d 440, 449 (1996) (Cook, J., specially concurring) ("In my view, the confrontation clause permits hearsay evidence that does not fall within a firmly rooted hearsay exception only when use of that evidence is necessary, only when the declarant is unavailable to testify in court," citing *Wright*).

Fortunately, a recent decision by the Supreme Court of Illinois seems to have finally killed the *Roberts obiter dicta*, at least in this state. In *People v. McClanahan*, 191 Ill. 2d 127 (2000), the supreme court reviewed the decisions of the United States Supreme Court regarding federal constitutional requirements concerning the admissibility of hearsay testimony. In doing so, the supreme court noted that the defendant's argument in that case was based primarily on *Roberts*. The Supreme Court of Illinois discussed the preexisting "unavailability" requirement of *Roberts* and noted the following:

> "The Supreme Court later limited the unavailability requirement of *Roberts* to those situations in which the hearsay statements were made in the course of a prior judicial proceeding. *White v. Illinois*, 502 U.S. 346, 116 L. Ed. 2d 848, 112 S. Ct. 736 (1992)." *McClanahan*, 191 Ill. 2d at 132 n.3.

### 3. *The Constitutionality of Section 115—10.2* ### *As Applied to Defendant*

Defendant next contends that the Bishop transcript was improperly admitted into evidence because it neither (1) falls under any of the firmly rooted exceptions to the hearsay rule, nor (2) possesses the "particularized guarantees of trustworthiness" required by the confrontation clause. We disagree.

At the section 115—10.2 hearing, the trial court needed to determine whether Bishop's statements possessed circumstantial guarantees of trustworthiness equivalent to those contained in firmly rooted exceptions to the hearsay rule. A trial court making this determination must consider the totality of the circumstances, and we will not disturb the court's determination absent an abuse of discretion. *People v. Boyd*, 307 Ill. App. 3d 991, 997, 719 N.E.2d 306, 310 (1999).

In *Wright*, the Supreme Court listed certain nonexclusive factors for trial courts to consider when analyzing whether a hearsay statement is reliable, including (1) spontaneity and consistent repetition; (2) the mental state of declarant; and (3) the lack of a motive to fabricate. *Wright*, 497 U.S. at 821-22, 111 L. Ed. 2d at 656, 110 S. Ct. at 3150. To assist trial courts as they evaluate the trustworthiness of

proffered testimony under section 115—10.2 of the Code, we suggest they consider the following factors, with the understanding that this list is not exclusive or exhaustive, and no single factor is controlling:

"1. Was the statement made under oath? A statement under oath to a law enforcement officer and sworn testimony before a grand jury indicate trustworthiness.

2. Did the declarant speak from personal knowledge? If not, the statement bears little or no trustworthiness.

3. Who is the declarant? What are his age, education, and experience? Does he ordinarily use the words contained in the statement?

4. What was the declarant's mental state? Was he under duress or some kind of pressure to make the statement? Did he have a motive to fabricate? Did he have a bias or prejudice against the person named in the statement? If the declarant was trying to gain favor or leniency, the statement's value is diminished. On the other hand, if the declarant had nothing to lose, or if he knew the truth of what he said would be investigated at his peril, trustworthiness is enhanced. Voluntary statements, especially if in the declarant's own handwriting, are thought to reflect trustworthiness. Voluntary grand jury testimony, not given under a grant of immunity or under law enforcement pressure, contains circumstantial guarantees of trustworthiness. A grant of immunity would weaken trustworthiness.

5. How was the interview conducted? Spontaneous statements are more credible. Statements in response to leading or suggestive questions lack trustworthiness. Who asked the questions? Is that person to be trusted?

6. What are the circumstances of the making of the statement? Who was there? Why were they there? The presence of the defendant's lawyer or the defendant himself adds to trustworthiness. If the declarant's lawyer elicited the statement with questions, trustworthiness is decreased. How long after the event was the statement made? The longer the time, the less trustworthy, since there is more time and opportunity to fabricate.

7. How was the statement recorded, and what were the motives of the person reporting the statement? Trustworthiness is enhanced when there is no question that the statement was made, such as when a court reporter transcript or a videotaped statement is involved.

8. Did the declarant ever recant or reaffirm his statement?" T. Mauet & W. Wolfson, Trial Evidence 229-30 (1997).

Bishop's interview took place later the same day that the crime was committed. She went to the police station of her own free will out of concern for her nephew, defendant, whom she thought might be in

danger. Her statements could have led to her own arrest as an accomplice. We conclude that, based upon the totality of the circumstances, the trial court did not abuse its discretion by deciding that Bishop's statements contained sufficient circumstantial guarantees of trustworthiness to permit those statements to be read to the jury pursuant to section 115—10.2 of the Code.

## B. The Single Subject Rule

■ Defendant next contends that the Act (Pub. Act 89—689, eff. December 31, 1996 (1996 Ill. Laws 3775)), which enacted section 115—10.2 of the Code, violates the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)) and is therefore void. In *People v. Dixon*, 308 Ill. App. 3d 1008, 721 N.E.2d 1172 (1999), this court determined that the Act does not violate the single subject rule and we adhere to that decision. See also *Campbell*, 309 Ill. App. 3d 423, 721 N.E.2d 1225; *People v. Majors*, 308 Ill. App. 3d 1021, 721 N.E.2d 753 (1999).

## C. The Rereading of the Bishop Transcript During Jury Deliberations

■ Defendant next contends that the trial court failed to exercise its discretion when it allowed the Bishop transcript to be reread to the jury during deliberations. We disagree.

During deliberations, the jury sent out a note requesting that it be provided a copy of Bishop's testimony. The trial court's dialogue with the prosecutor and defense counsel, in pertinent part, follows.

"THE COURT: [Defense counsel], do you not agree with [the prosecutor's] recitation of the general obligation to provide readily available portions of the testimony to the jury in response to a jury request?

MR. DING [(defense counsel)]: I'm not sure I understand your question, judge.

THE COURT: I understood [the prosecutor] to indicate that he understood the law to be that the court had an obligation to provide the jury with *** transcriptions of portions of the testimony if [they] were readily available in response to a jury question. Do you agree with him that that is generally what the law is or do you have a different view on what the law is?

MR. DING: I would agree with that statement.

THE COURT: Well, I understand that to be a correct evaluation by both of the attorneys of what the law is. Nonetheless, I believe Mr. Ding is absolutely right, that the net effect of providing this one transcript to the jury is to dramatically emphasize that testimony.

The other mechanism available to a jury inquiry of this sort is, of

course, to have the portion of the testimony about which the jury inquires read to the jury in court so that the jury isn't left with only a portion of the evidence in its possession for a lengthy period of time during deliberations. To help focus the attorneys' options, I will indicate for the record I sustain Mr. Ding's objection to just sending the transcript of the testimony back there. I think that would unduly emphasize the Bishop testimony. I'm not going to permit just a transcript to go back to the jury room. \*\*\*

MR. GASTON [(prosecutor)]: Well then, judge, I would suggest the alternative to have the jury read the testimony of that transcript of the statement by Gladys Bishop. .

THE COURT: Mr. Ding.

MR. DING: I'll continue my objection and state that even the reading of a portion of the statement that Detective Shepard read of Gladys Bishop is still going to unduly emphasize her testimony.

THE COURT: Mr. Gaston.

MR. GASTON: Judge, I think it's a question of the court's discretion. The court should, in my judgment, in trying to facilitate the trier of fact as best the court possibly can, without jeopardizing the right of the defendant, and I think this is an appropriate alternative because there is certainly authority for portions of testimony to be furnished to the jurors.

THE COURT: Well, I overrule the defense objection. We'll have the transcript of the Bishop testimony read to the jury."

Defendant argues that the trial court believed it was "obligated" to provide the Bishop transcript to the jury, and therefore the court failed to exercise its discretion. Defendant's argument focuses exclusively on the court's choice of words, while ignoring the bent of the discussion during which they were used. The court's discussion of what it believed to be the general rule was not a pronouncement of its absolute duty but a springboard for discussion. The transcript supports the conclusion that the court knew it had discretion to (1) grant or deny the jury's request, or (2) come up with an alternative that would be satisfactory to both the State and defendant. The court's conclusion—that having the testimony read to the jury would be less likely to unfairly prejudice the defendant than permitting a transcript to go to the jury room—was an exercise of its discretion and not an abuse thereof.

## D. Excessive Sentence

■ Next, defendant argues that the court abused its discretion by sentencing him to 60 years in prison. We disagree.

"Although the legislature has prescribed the permissible ranges of sentences, great discretion still resides in the trial judge in each

case to fashion an appropriate sentence within the statutory limits. [Citations.] The trial court must base its sentencing determination on the particular circumstances of each case, considering such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999).

When a trial court sentences a defendant to a term of imprisonment within the statutory range, we will not disturb that sentence absent an abuse of discretion. *People v. Goyer*, 265 Ill. App. 3d 160, 169, 638 N.E.2d 390, 396 (1994). Conviction for first degree murder carries a penalty of between 20 and 60 years in prison. 730 ILCS 5/5—8—1(a)(1)(a) (West 1998).

Defendant claims that the trial court failed to strike a proper balance between the goal of protecting society and rehabilitating him. We are not persuaded. The only evidence of defendant's purported rehabilitative potential was that he was 24 years old and had a child. Other evidence indicated that defendant's rehabilitative potential was weak. Defendant had virtually no employment history. As the trial court noted, he had failed to take advantage of a sentence of intensive probation supervision for his previous offense, unlawful discharge of a firearm. As a result, his probation was revoked, and he was sentenced to eight years in prison. His probation officer described his performance as "poor." The evidence showed that defendant's criminal activity was escalating, not declining.

At defendant's sentencing hearing, the trial court noted that it also considered the following factors: (1) the nature of defendant's crime, (2) the evidence that defendant was involved in another shooting, and (3) deterrence. The record fully supports the court's assessment of defendant's "credibility, demeanor, general moral character, mentality, social environment, habits, and age" (*Fern*, 189 Ill. 2d at 53, 723 N.E.2d at 209), and we conclude that the 60-year sentence the trial court imposed does not constitute an abuse of the court's discretion.

### E. Sentence Credit

■ Finally, defendant contends that he is entitled to 56 days of credit for time spent in custody in Georgia. We agree.

A defendant confined in a foreign state by reason of Illinois process is entitled to sentence credit for time confined in the foreign

state. *People v. Davies*, 17 Ill. App. 3d 920, 921, 309 N.E.2d 82, 83 (1974); *People v. Johnson*, 175 Ill. App. 3d 908, 917, 530 N.E.2d 627, 634 (1988); see also 730 ILCS 5/5—8—7(b) (West 1998) ("The offender shall be given credit *** for time spent in custody as a result of the offense for which the sentence was imposed").

The presentence investigation report states that defendant was incarcerated from February 12, 1998, to October 21, 1998, a total of 252 days. At the sentencing hearing, defense counsel asked the trial court to credit defendant for the additional 56 days that defendant spent in custody in Georgia, awaiting extradition on this charge. The presentence report states that defendant was arrested in Georgia in December 1997.

At sentencing, the State did not dispute that defendant was in custody on this charge in Georgia, but argued that Illinois law does not allow credit for time served in foreign states. The trial court adopted the State's position and ruled against defendant. It was error *to do so.* Because (1) the presentence report showed that defendant was arrested in Georgia; (2) defense counsel requested credit for the time served in Georgia; and (3) the State did not dispute the fact that defendant served time in Georgia *on this charge,* the trial court erred by denying defendant's request. Defendant is entitled to credit for the time served on this charge in Georgia, and we remand this cause with directions that the trial court amend its judgment of sentence to provide defendant an additional 56 days of credit for time served.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment and remand with directions.

Affirmed and remanded with directions.

MYERSCOUGH and KNECHT, JJ., concur.