THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRYL G. MORGASON, Defendant-Appellant.

Fifth District   No. 5—98—0364

Opinion filed March 16, 2000.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, and Joseph W. Vigneri, of Joseph W. Vigneri, Ltd., of Decatur, for appellant.

Teresa Phillips, State's Attorney, of Taylorville (Norbert J. Goetten, Stephen E. Norris, and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

On December 4, 1997, defendant Darryl G. Morgason and George Anthony were charged with two counts of first-degree murder (720 ILCS 5/9—1(a)(1), (a)(2) (West 1996)) and one count of conspiracy to commit murder (720 ILCS 5/8—2(a) (West 1996)). The conspiracy count charged defendant and Anthony with agreeing to murder Doug Lykins and with performing an act in furtherance of that agreement. According to the parties at oral argument, the State entered a *nolle prosequi* as to the charges against Anthony.

On April 8, 1998, following a seven-day jury trial in Christian County, defendant was found guilty of the conspiracy charge. The jury acquitted defendant of the first-degree murder charges. The circuit court of Christian County entered judgment on the verdict and sentenced defendant to 14 years in the Illinois Department of Corrections. Defendant now appeals.

On appeal, defendant raises the following three issues: (1) whether the State presented sufficient evidence to prove defendant guilty of conspiracy to commit murder beyond a reasonable doubt, (2) whether the trial court erred in permitting the State's cross-examination of Josh Jones to exceed the scope of direct examination, and (3) whether the trial court erred when it admitted portions of Lovie Morgason's tape-recorded statement as substantive evidence. As we believe the

trial court committed reversible error in admitting portions of Lovie Morgason's tape-recorded statement as substantive evidence, we reverse the judgment of the trial court and remand this case for a new trial.

## FACTS

During trial, the State's evidence and arguments were primarily directed toward the first-degree murder charges. Consequently, much of the evidence introduced during the seven-day trial had little bearing on the conspiracy charge. However, as defendant was acquitted of the murder charges, we shall not concern ourselves with that evidence but focus primarily on the evidence that pertains to the conspiracy. That evidence, when examined in the light most favorable to the prosecution (*People v. Campell*, 146 Ill. 2d 363, 374 (1992)), is as follows.

During the evening of September 4, 1996, defendant and Anthony went to Butch Shelton's home. Shelton testified that he had known defendant for many years. Also present at Shelton's home that evening were Jo Jo Tremain, a friend of Shelton's, and Doug Lykins, the victim. Although other people were also present at the house, their presence is not relevant to this appeal.

The topic of conversation at the house that evening pertained to drugs. In addition, several people at the house were drinking alcohol and/or using drugs. Shelton testified that, at one point during the evening, he overheard Lykins conversing with defendant about pictures that were shown to Lykins by a drug enforcement agent while Lykins was in a jail in Effingham. According to Shelton, Lykins told defendant that one of the pictures he was shown was that of defendant. Shelton testified that Lykins told defendant that he told the agent that he knew defendant but did not associate with him.

Shelton testified that the party began to break up around 11 p.m. Shelton heard defendant ask if anybody wanted to go to the lake to drink. Defendant, Anthony, and Lykins left Shelton's house together. Shelton testified that after they left, he fell asleep on the couch. Shelton claims that about three hours later, he was awakened by a knocking on the back door of his home. Shelton got up and answered the door, and standing there were defendant and Anthony. Defendant and Anthony walked inside Shelton's home, and defendant stated, "You don't have to worry about him no more." Shelton responded that he did not want to hear it, and he asked defendant and Anthony to leave. Lykins was never seen alive again.

Gene Boston, the uncle of defendant's ex-wife, testified that around 4:30 in the morning on September 5, 1996, defendant came to his house. Boston testified that defendant came inside, sat on his couch,

and said that he had killed someone. Boston claimed that defendant told him that if Boston told anybody, he would be next in line.

Joss Jones, defendant's nephew, testified that sometime in early September 1996, defendant and Anthony came to his home during the early morning hours. Jones did not remember the exact date, but he testified that when defendant arrived, defendant stated, "I did it."

Other evidence introduced by the State includes a tape-recorded statement made by defendant's ex-wife, Lovie Morgason. The State played portions of the statement as substantive evidence to the jury. In this tape-recorded statement, which was made on June 5, 1997, during an interview Lovie had with the police, Lovie claims that defendant told her that he had knowledge of who killed Lykins. Her statement claimed that defendant told her that he and Anthony and Shelton were involved in the murder. Finally, her statement claimed that defendant told her that Anthony did not kill Lykins but that Anthony beat up Lykins and was present when defendant held Lykins underwater. During her testimony at trial, Lovie admitted making this tape-recorded statement but testified that the statement was untrue. She testified that she made up the contents because she felt she was being implicated for something she had not done. At trial, Lovie testified that defendant never told her who killed Lykins.

Defendant testified on his own behalf. He admitted that he had been at the lake on the evening of September 4, 1996. However, defendant claims that by the time he had arrived at the lake, Lykins had already been killed.

According to defendant, he, Anthony, and Lykins left Shelton's house about 10:30 p.m. and drove around town for about an hour. Then, defendant dropped Anthony off at home and returned to Shelton's house with Lykins. Defendant stated that when they returned to Shelton's house, they saw Tremain driving up and down the street on a four-wheeler. Defendant testified that Shelton owed him about $1,700 for drugs and that Shelton offered to give defendant two stolen four-wheelers and a jet ski for the satisfaction of his debt. Defendant testified that he and Shelton agreed to hide the four-wheelers and the jet ski at defendant's lake lot. Defendant testified that he loaded one of the four-wheelers into his van and attached the jet ski to his van and then drove to the lake lot. Defendant testified that he planned to meet Shelton at the lake lot, as Shelton was trying to locate a truck to transport the other four-wheeler. When defendant left Shelton's house for the lake lot, Lykins stayed at Shelton's house.

According to defendant, he was temporarily delayed on his way to the lake lot because the four-wheeler fell out of his van. When he eventually arrived, Shelton and Tremain were already there. Defen-

dant asked them where Lykins was, to which Shelton responded, "Well, you don't have to worry about Doug any more." Defendant testified that he believed that Lykins was dead. Defendant also testified that he did not have anything to do with Lykins' death. Defendant then drove to Boston's house, where he allegedly stored the four-wheeler and jet ski.

In a statement given to police on January 20, 1997, defendant admitted that he had been present when Shelton drowned Lykins. However, during trial, he stated that this claim was false. Furthermore, defendant denied making any incriminating statements to Jones, Boston, or Lovie. We shall now turn to the issues raised by defendant on appeal.

## DISCUSSION

As defendant's third issue on appeal is dispositive, we shall address that issue first. Again, defendant's third issue on appeal is whether the trial court committed reversible error when it admitted portions of Lovie Morgason's tape-recorded statement, a prior inconsistent statement, as substantive evidence.

■ Generally, a party may only use a prior inconsistent statement for purposes of impeachment. See *People v. Rodriguez*, 291 Ill. App. 3d 55, 62 (1997). However, section 115—10.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10.1 (West 1996)) allows a party to use a witness's prior inconsistent statement as substantive evidence under certain circumstances. See *Rodriguez*, 291 Ill. App. 3d at 62. In pertinent parts, section 115—10.1 of the Code provides:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—
***
(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and
***
(C) the statement is proved to have been accurately recorded by a tape recorder, *** or any other similar electronic means of sound recording." 725 ILCS 5/115—10.1 (West 1996).

During trial, the State requested that Lovie's prior tape-recorded statement be introduced as substantive evidence. Defense counsel objected, raising the argument that its admission was not allowed pur-

suant to section 115—11 of the Code. The State corrected defense counsel's citation of the appropriate statute and pointed out that it specifically falls under the exception in 115—10.1 of the Code. The trial court stated that it had read the rule, and the court overruled defense counsel's objection. In defendant's posttrial motion, defense counsel argued that the admission of the tape-recorded statement as substantive evidence was in error as it failed to meet the *personal knowledge* requirement of the statute. The trial court denied defendant's posttrial motion.

On appeal, there is no dispute that most of the parameters of section 115—10.1 have been met. Lovie's testimony at trial was inconsistent with her prior tape-recorded statement, and Lovie was subject to cross-examination. Furthermore, the statement proved to have been accurately recorded. The only dispute is whether the statement "narrates, describes, or explains an event or condition of which the witness had *personal knowledge*." (Emphasis added.) 725 ILCS 5/115—10.1(c)(2) (West 1996).

"Personal knowledge" has been defined by this court in *People v. Cooper*, 188 Ill. App. 3d 971, 973 (1989), to mean having actually perceived the events that are the subject of the statement. Excluded from this definition are statements made to the witness by a third party, where the witness has no firsthand knowledge of the event that is the subject of the statements made by the third party. See *People v. Wilson*, 302 Ill. App. 3d 499, 508 (1998). This includes a statement made to a witness by a third party that is an admission; for so long as the witness lacks "personal knowledge" of the subject of the statement, the statement is not admissible under this exception to section 115—10.1. See *Cooper*, 188 Ill. App. 3d at 973. In other words, to satisfy the personal-knowledge requirement of the statute, "the witness must have observed, and not merely have heard, the subject matter underlying the statement." *People v. Hastings*, 161 Ill. App. 3d 714, 720 (1987).

In the instant case, there is no evidence that Lovie was present at the murder scene. There is no evidence that Lovie observed the murder or had any firsthand knowledge of the events that transpired at the murder scene. The information in the tape-recorded statement was derived solely from what she had been told by defendant. The subject of her statements was not derived from her personal knowledge, as personal knowledge has been defined by this court pursuant to section 115—10.1.

On appeal, the State requests that in light of our supreme court's decision in *People v. Thomas*, 178 Ill. 2d 215 (1997), we reexamine this court's prior decisions that define "personal knowledge" and that we

broaden the definition to encompass not only what a witness has seen but what a witness has been told. In *Thomas*, a prior inconsistent statement of a witness was admitted as substantive evidence where the witness had no personal knowledge of the subject matter. *Thomas*, 178 Ill. 2d at 234. However, our supreme court reviewed any error surrounding the admission of the statement under the plain error doctrine and did not analyze whether the statement was admissible under section 115—10.1. *Thomas*, 178 Ill. 2d at 235. In *Thomas*, during trial, defense counsel failed to specifically object and argue that the witness whose prior inconsistent statement had been admitted lacked the requisite personal knowledge. The defendant also failed to raise this issue in a posttrial motion. See *Thomas*, 178 Ill. 2d at 234. Accordingly, the supreme court considered the issue waived and addressed any error of the admission of the statement under the plain error doctrine. *Thomas*, 178 Ill. 2d at 235. After viewing the evidence as a whole, the supreme court noted that the evidence as to the defendant's guilt was overwhelming, and, therefore, the admission of the statement did not deprive the defendant of a fair trial. *Thomas*, 178 Ill. 2d at 235-36.

The instant case differs significantly from *Thomas* in that during trial in the instant case defense counsel did object to the admission of Lovie's tape-recorded statement and the trial court specifically addressed the admissibility of the statement under section 115—10.1. The trial court in the case at bar noted at the time of its ruling that it had read section 115—10.1 and found the statement admissible pursuant to the statute. Furthermore, in the instant case, defense counsel filed a posttrial motion specifically arguing that Lovie's statement lacked the "personal knowledge" element required by the statute. Defendant certainly did not waive this issue in the instant case, so our review differs significantly from that in *Thomas*.

In any event, regardless of the significant differences between the instant case and *Thomas*, we decline the State's invitation to reexamine this court's prior decisions that define "personal knowledge" in light of *Thomas*. Our supreme court's decision in *Thomas* did nothing to alter or call into question this court's prior interpretations and applications of "personal knowledge." As such, we reject the State's assertion that *Thomas* "places the validity of *Cooper* in question" because it "refused to follow or endorse this court's *Cooper* decision." The supreme court in *Thomas* did nothing of the sort.

In addition, this court has previously refused the precise invitation by the State to broaden the parameters of "personal knowledge." In *People v. Hubbard*, 276 Ill. App. 3d 98, 104 (1995), we refused to broaden the definition, and for the reasons stated in *Hubbard*, we re-

fuse to do so here. Suffice it to say, as Lovie's statement fails to satisfy the personal-knowledge requirement of the statute, it should not have been admissible as substantive evidence.

■ Next, the State contends that even if we find there was error in the admission of the tape-recorded statement, such error constitutes harmless error. The State argues that while the statement may have been important to the murder charge, "it was of little or no significance on the conspiracy charge." We disagree and believe the admission of the statement did not result in harmless error.

Lovie's statement is the only evidence that directly places Anthony with defendant at the murder scene. Although his presence can be inferred from other evidence, Lovie's statement is the only statement which indicates that Anthony had actively participated in the murder at the lake lot. As the evidence in this case was close, we therefore cannot say that this evidence is harmless beyond a reasonable doubt. Accordingly, the trial court committed reversible error by admitting as substantive evidence the tape-recorded statement of Lovie Morgason, and this case must be reversed and remanded for a new trial.

■ In light of our decision to reverse the trial court and remand for a new trial, double jeopardy concerns require that we address defendant's challenge to the sufficiency of the evidence. See *People v. Comage*, 303 Ill. App. 3d 269, 275 (1999). Sufficient evidence exists to support a conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Comage*, 303 Ill. App. 3d at 275. In a conspiracy case, the essential elements of the crime are (1) an agreement to commit that particular offense, (2) with an intent that such offense actually be committed, and (3) the commission of an act in furtherance of the agreement by a conspirator. See *People v. Mordick*, 94 Ill. App. 3d 497, 499 (1981). Direct evidence of an agreement is not necessary for a conspiracy conviction, since agreement between coconspirators may be inferred from their concerted acts towards a common goal. See *People v. Katsigiannis*, 171 Ill. App. 3d 1090, 1099 (1988).

■ We believe that the remaining evidence is sufficient to establish the elements of the conspiracy charge beyond a reasonable doubt. The remaining evidence in this case demonstrates that defendant, Anthony, and Lykins left Shelton's home together. There is evidence that defendant and Anthony reappeared at Shelton's house a few hours later, and defendant stated, "You don't have to worry about him no more." In addition, Jones testified that defendant and Anthony were present at his home sometime in the early morning hours sometime in September and defendant stated "I did it." Furthermore, Boston testi-

fied that defendant admitted to him that he had killed a man. Finally, defendant admits that he went to the lake lot the evening that Lykins was killed, and he testified that he was not there alone. Although defendant testified that Anthony was not present, the jury is free to reject this portion of defendant's testimony. We believe that the evidence was sufficient to support a conviction of conspiracy and that our consideration of the evidence admitted at trial will protect defendant's constitutional right against double jeopardy. See *People v. Fuller*, 292 Ill. App. 3d 651, 668 (1997). As defendant's second issue on appeal is unlikely to reoccur in a new trial, it need not be addressed.

For the foregoing reasons, the judgment of the trial court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

CHAPMAN and KUEHN, JJ., concur.