THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL
BUENO, Defendant-Appellant.

Second District    No. 2—04—0048

Opinion filed May 20, 2005.

Raymond G. Bendig, of Chicago, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer and Joseph S. Mikula, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GROMETER delivered the opinion of the court:

Defendant, Daniel Bueno, was charged by indictment with two counts of aggravated discharge of a firearm within 1,000 feet of real property comprising a school (720 ILCS 5/24—1.2(a)(1), (b) (West 2002)), two counts of aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(1) (West 2002)), and one count of aggravated unlawful use of a weapon (720 ILCS 5/24—1.6(a)(1), (a)(3)(A) (West 2002)). Following a bench trial in the circuit court of Lake County, defendant was convicted of aggravated unlawful use of a weapon and one count each of aggravated discharge of a firearm within 1,000 feet of real property

comprising a school and aggravated discharge of a firearm. The trial court sentenced defendant to 16 years' imprisonment on the conviction of aggravated discharge of a firearm within 1,000 feet of real property comprising a school and 15 years' imprisonment on the conviction of aggravated discharge of a firearm. The court ordered the sentences to run concurrently. The court did not enter judgment on or sentence defendant for the aggravated unlawful use of a weapon conviction. On appeal, defendant raises two arguments. First, defendant contends that the trial court erred in admitting as substantive evidence a statement made by Sergio Ruiz, one of the State's witnesses. Second, defendant asserts that the State failed to prove him guilty beyond a reasonable doubt of aggravated discharge of a firearm. For the reasons that follow, we vacate defendant's conviction of and sentence for aggravated discharge of a firearm and we modify the mittimus, but we otherwise affirm the decision of the trial court.

## I. BACKGROUND

The charges against defendant arose out of a drive-by shooting that occurred the evening of September 25, 2002, when shots were fired at a residence located at 502 North Butrick in Waukegan and at a vehicle parked in a driveway at 506 North Butrick. At approximately 9:30 p.m., the Waukegan police department received a report of the shooting. Officer Alias Agalianos testified that, when he arrived about one minute later, at least six people were in the home at 502 North Butrick. After speaking with some witnesses, Agalianos searched the area. He found two spent shell casings in the middle of the street. Agalianos examined the house for damage and observed two bullet holes. In addition, Agalianos observed that a truck parked in the driveway at 506 North Butrick had one bullet hole in the tailgate and another in the rear driver's-side tire.

Officer Michael Mandro, an evidence technician with the Waukegan police department, testified that two shell casings and four projectiles were recovered from the scene. Mandro determined that the shell casings were from a .38-caliber Winchester. Two of the projectiles were found at 502 North Butrick. According to Mandro, these two projectiles passed through the front door of the residence. One of the projectiles was found lodged in an interior doorway, and the other was found resting on a windowsill.

Sergio Ruiz testified that he was serving a three-year sentence in the Illinois Department of Corrections for unlawful sale of a firearm. In October 2002, Sergio, then 17 years old, and an acquaintance were arrested by the Waukegan police department on a charge unrelated to this case. At that time, Sergio gave two written statements to the

police regarding the September 25, 2002, shooting. The first statement was given on October 22, 2002, at 9 p.m. The second statement was given on October 23, 2002, at 6 p.m. Both statements were typed by Sergeant Cappelutti and witnessed by Cappelutti and Detective Charles Schletz.

Sergio testified that after being informed of his *Miranda* rights, he gave police a verbal statement. The officers asked Sergio to reduce the statement to writing. Sergio indicated that he did not want to write out a statement, so Cappelutti typed the statement for him. Sergio reviewed the typed statement and signed it. Sergio identified People's exhibit 34 as the first statement he gave to police. In this statement, Sergio told the police that he is a junior member of the Latin Kings and that he holds guns for them. Sergio also stated that Juan Vargas was the person who fired shots at 502 North Butrick and that Sergio had supplied Vargas with the gun used in the shooting. After the shooting, Vargas returned the weapon to Sergio.

In his second statement, Sergio stated that it was not Juan Vargas who fired the shots at 502 North Butrick but, rather, an individual named "Baqweek." Sergio further stated that, the day after the shooting, "Baqweek" told him that he fired four shots at the residence while riding in a black Lincoln with "Emmanuel" and "Smokey." Sergio told police that he was familiar with the weapon used in the shooting, a ".380," and that the gun always jammed after the third or fourth shot. Sergio stated that "Baqweek" told him that the gun jammed on the night of the shooting. The second statement was marked as People's exhibit 35.

When asked at defendant's trial about the specifics of his first statement, Sergio stated that he did not wish to answer any more questions. The trial court ordered Sergio to respond, but he still refused. The court then held Sergio in direct contempt of court and delayed any further questioning of Sergio until he consulted with his attorney. After speaking with his attorney, Sergio again took the witness stand. Sergio denied making certain statements to police and refused to testify any further. The trial court then gave defendant's attorney the opportunity to cross-examine Sergio. On cross-examination, Sergio admitted that he signed the first statement. He then reviewed the statement and testified that parts of the statement were his, but that he could not recall which ones. Defense counsel stated that he had "nothing further." The State then submitted that Sergio was "refusing to testify both to the State and the questioning of the defense." Thereafter, the trial court found Sergio in contempt of court and sentenced him to six months' imprisonment.

The State then moved to admit People's exhibits 34 and 35 as

substantive evidence pursuant to sections 115—10.1 and 115—10.2 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10.1 (West 2002); 725 ILCS 5/115—10.2 (West Supp. 2003)). Defendant objected to the admission of the statements. The trial judge concluded that the statements were admissible under both sections. People's exhibit 36, a photo lineup in which Sergio identified defendant as "Baqweek," was also admitted into evidence.

Maria Ruiz, Sergio's mother, identified defendant by the name "Baqweek" or "Baquick." Maria testified that, at some point during 2002, she found a gun in her house. After Maria found the gun, "Baqweek" came to her house, and she gave the gun to him. "Baqweek" told Maria that the gun belonged to his friend and that he would return it to him. Maria cautioned "Baqweek" not to play with guns and warned him that the next time that she saw a weapon in her home she would call the police.

Emmanuel Gomez testified that he is on juvenile probation in relation to the September 25, 2002, shooting. Late in October 2002, Gomez gave the police a written statement. In the statement, Gomez acknowledged driving the car from which the shots were fired. Specifically, Gomez stated that he drove a dark-colored Lincoln with the headlights off past a residence at 502 North Butrick and that a passenger in the car fired shots at the home because a rival gang member lived there. Gomez identified the shooter as "Juan." He told the police that Juan shot at the house four times before the gun jammed. Gomez did not reference defendant's given name in his written statement to police. However, he did tell police that an individual nicknamed "Quick" was one of the passengers in his car on the night of the shooting. At defendant's trial, Gomez testified that Quick's given name is Ignacio and that Quick is a friend of Sergio Ruiz.

On November 8, 2002, Gomez entered a guilty plea in juvenile court. The transcript from Gomez's juvenile court proceeding was admitted as substantive evidence. Defense counsel did not object, stating that the transcript "meets the requirements of the statute." At the proceeding, Gomez identified "Daniel Bueno" as the individual who fired the shots from his car on September 25, 2002. Gomez told the juvenile court judge that he knew that defendant had a weapon. Gomez also told the judge that he pulled up to 502 North Butrick and turned off his headlights, knowing that defendant was going to discharge the weapon. At defendant's trial, however, Gomez testified that he had never met defendant. Gomez testified that he lied to the juvenile court judge when he identified defendant as the shooter. Gomez testified that, while in custody at the juvenile detention center, he learned about defendant from reading statements written by other

individuals involved in the shooting. However, when presented with the statements he read from these individuals, Gomez admitted that none of them reference defendant's given name.

On cross-examination, Gomez reiterated that defendant was not in his car on September 25, 2002. Moreover, Gomez denied that he was the individual who drove the car involved in the shooting. Gomez also denied that any of the nicknames referenced in his written statement to the police belonged to defendant. Gomez stated that at the November 8, 2002, juvenile court proceeding, no one showed him a picture of defendant to confirm or deny that he was the shooter. Gomez also testified that he withdrew the guilty plea he entered on November 8, 2002, because he "knew that no Daniel Bueno was involved in that shooting." Later, Gomez again pleaded guilty in juvenile court, allegedly without implicating defendant in the shooting. On redirect, Gomez acknowledged that after he withdrew his plea, he reentered a plea of guilty before a different judge, based on the same facts as the previous plea.

Detective Schletz identified People's exhibit 34 as the first written statement obtained from Sergio Ruiz in relation to the shooting on September 25, 2002. Schletz testified that the statement was signed by Sergio and witnessed by Schletz and Sergeant Cappelluti. Schletz testified that the persons that he initially spoke to about the September 25, 2002, shooting all indicated that a Juan Antonio Vargas was the triggerman. After learning that Vargas was locked up in a juvenile detention center at the time of the shooting, Schletz spoke to Sergio again. Schletz identified People's exhibit 35 as the second written statement obtained from Sergio. The second statement was also signed by Sergio, Schletz, and Cappelluti.

Schletz admitted that none of the individuals who gave statements identified defendant by his given name. Instead, defendant was identified as "Baqweek," "Baquick," "Quick," "Palatine," or "Juan Antonio's cousin from Palatine." Schletz identified People's exhibit 36 as a photo lineup that was shown to Sergio. Sergio identified defendant as an individual nicknamed "Baquick" or "Baqweek." Finally, Schletz testified that, using a walking meter, he determined that the distance from the place where the shooting occurred to school property was 701 feet.

Officer Andy Ulloa of the Waukegan police department testified that, on October 22, 2002, he interviewed Gomez regarding the September 25, 2002, shooting. During the interview, Ulloa never mentioned defendant's given name. Gomez gave police a written statement in Spanish, which Ulloa identified as People's exhibit 26. Ulloa testified that in the statement, Gomez identified Juan Vargas as the

shooter. Gomez also stated that an individual named "Quick" was in the vehicle at the time of the shooting. Ulloa identified defendant as the individual nicknamed "Baqweek."

After the State rested, defendant moved for a directed finding. The trial court denied defendant's request. Defendant then called two of his sisters as alibi witnesses.

Maria Bueno (Bueno) testified that she and her family, including defendant, spent the evening of September 25, 2002, celebrating the birthday of her sister, Carolina Estanislao. Although Estanislao's birthday was September 20, the family decided to celebrate the occasion on September 25 because Estanislao and her husband had planned a private celebration for Estanislao's actual birthday. Bueno testified that the family dined at a Chinese buffet in Bloomingdale. The restaurant, located about 60 to 90 minutes from Waukegan, is close to Bueno's home in Hanover Park. Bueno testified that she, her former spouse, and their children arrived at the buffet between 7:15 and 7:30 p.m. Defendant drove with them. Bueno estimated that the group left the restaurant shortly after 9 p.m. At that time, defendant drove with Bueno and her family to her Hanover Park home, arriving at about 9:30 p.m. Members of the extended family also returned to Bueno's home. The family, including defendant, stayed up until about 11 p.m. Bueno testified that when she awoke the next morning, defendant was still at her home.

Bueno stated that she did not find out that her brother had been implicated in the September 25, 2002, shooting until after he started going to court in September 2003. She admitted, however, that when she did find out about the charges against her brother, she did not report his whereabouts the evening of September 25 to law enforcement authorities because she "didn't know that we were supposed to say anything if he was with us" and because she did not believe that it would do any good at that point. Bueno testified that the family did not take any photographs at the dinner and that she did not have a receipt from the restaurant because the family paid with cash.

Estanislao's testimony mirrored Bueno's in most respects. Estanislao added that she was living at Bueno's house at the time of the birthday celebration. Estanislao testified that she allowed defendant to sleep in her bedroom on the night of September 25, 2002, and that defendant went to sleep before her. When Estanislao awoke the next morning, defendant was still in bed. On cross-examination, Estanislao testified that when she found out that her brother was in trouble, she did not contact any law enforcement agents to tell them that defendant was with her on the evening of September 25, 2002, because she "didn't think [she] had to because [she] was coming to court."

Following Estanislao's testimony, defendant rested. The trial court found defendant guilty of one count of aggravated discharge of a firearm, one count of aggravated discharge of a firearm within 1,000 feet of real property comprising a school, and one count of aggravated unlawful use of a weapon. The trial court sentenced defendant to 16 years' imprisonment on the conviction of aggravated discharge of a firearm within 1,000 feet of a school and 15 years' imprisonment on the conviction of aggravated discharge of a firearm. The sentences were ordered to run concurrently. The trial court did not enter judgment on or impose sentence for the aggravated unlawful use of a weapon conviction. Defendant's posttrial motion was denied. This timely appeal ensued.

## II. ANALYSIS

On appeal, defendant first argues that the trial court erred in admitting as substantive evidence the second statement that Sergio Ruiz gave to the police. The trial court determined that this statement was admissible under both section 115—10.1 and section 115—10.2 of the Code (725 ILCS 5/115—10.1 (West 2002); 725 ILCS 5/115—10.2 (West Supp. 2003)). Defendant challenges the admissibility of Sergio's second statement on three separate grounds. First, defendant contends that Sergio's second statement was inadmissible under *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). Second, defendant asserts that Sergio's second statement was inadmissible under section 115—10.1 of the Code because Sergio never acknowledged at trial that he made the statement. Third, defendant contends that the statement was inadmissible under section 115—10.2 of the Code because it lacked "circumstantial guarantees of trustworthiness." The State disputes the application of *Crawford* to the facts of this case. In addition, while the State acknowledges that Sergio's second statement was admitted under both section 115—10.1 and section 115—10.2 of the Code (725 ILCS 5/115—10.1 (West 2002); 725 ILCS 5/115—10.2 (West Supp. 2003)), it argues that section 115—10.1 "is more applicable." The State asserts that section 115—10.2 does not apply because "it is limited by its own language to situations where the statement is not specifically covered by another hearsay exception" and Sergio's second statement is admissible under section 115—10.1. We begin our discussion with *Crawford*.[1]

---

[1]Defendant also suggests that the photo lineup in which Sergio identified defendant was improperly admitted. However, defendant devotes no analysis to this theory in his brief. Accordingly, we deem this contention waived. *People v. O'Connor*, 313 Ill. App. 3d 134, 137 (2000).

## A. *Crawford*

■ To be admissible, a prior out-of-court statement must not only comply with statutory requirements but also satisfy the confrontation clause. *People v. Martinez*, 348 Ill. App. 3d 521, 535 (2004); *People v. Patterson*, 347 Ill. App. 3d 1044, 1050 (2004). The sixth amendment's confrontation clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. In *Ohio v. Roberts*, 448 U.S. 56, 65-66, 65 L. Ed. 2d 597, 607-08, 100 S. Ct. 2531, 2538-39 (1980), the Supreme Court developed a " 'general approach' for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause." *Idaho v. Wright*, 497 U.S. 805, 814, 111 L. Ed. 2d 638, 651, 110 S. Ct. 3139, 3146 (1990). First, the Court stated that the declarant must be unavailable to testify at trial. *Roberts*, 448 U.S. at 65, 65 L. Ed. 2d at 607, 100 S. Ct. at 2538. Once the witness's unavailability is established, the statement of the unavailable witness will be admitted against a criminal defendant only if the statement bears "adequate 'indicia of reliability.' " *Roberts*, 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2539. The Supreme Court stated that reliability can be inferred where the evidence falls under a firmly rooted hearsay exception. *Roberts*, 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2539. Evidence not falling under a firmly rooted hearsay exception is admissible only if the party proffering the evidence demonstrates that the evidence possesses "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2539.

Recently, however, in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), the Supreme Court altered the "adequate indicia of reliability" framework developed in *Roberts*. *People v. Gilmore*, 356 Ill. App. 3d 1023, 1031 (2005). The *Crawford* Court differentiated between "testimonial" and "nontestimonial" hearsay. *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. The Court held that a "testimonial" statement of a witness who is absent from trial is admissible only where the declarant is unavailable and the defendant has had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 59, 158 L. Ed. 2d at 197, 124 S. Ct. at 1369. Although the Supreme Court declined to provide a comprehensive definition of "testimonial," it did note that it applies to "police interrogations." *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374; see also *Gilmore*, 356 Ill. App. 3d at 1032 (noting that statements made to police are "testimonial"). Thus, under *Crawford*, Sergio's second statement to police undoubtedly was testimonial. The Supreme Court stressed, however, that "when the declarant appears

for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 198 n.9, 124 S. Ct. at 1369 n.9. As a threshold matter, then, we must determine whether Sergio "appear[ed] for cross-examination" within the context of *Crawford*. *People v. Sharp*, 355 Ill. App. 3d 786, 792 (2005), a recent case from the Fourth District, is instructive on this matter.

In *Sharp*, the defendant was charged with predatory criminal sexual assault. Following a hearing pursuant to section 115—10 of the Code (725 ILCS 5/115—10 (West 2000)), the trial court allowed into evidence hearsay statements that the victim had made to her mother and to the director of a children's advocacy center. The victim testified at the defendant's trial, but did not respond on direct examination to questions about the details of the actual offense. On cross-examination, defense counsel asked general questions regarding the victim's activities on the day of the alleged assault as well as questions about the room where the assault allegedly took place. However, defense counsel did not ask the victim any questions about what happened to her in the room where the assault allegedly took place. A jury ultimately convicted the defendant of the charged offense. On appeal, the defendant argued that the hearsay statements were admitted in violation of the confrontation clause.

In its decision, the *Sharp* court discussed what it means to "appear for cross-examination" for purposes of the confrontation clause. The *Sharp* court noted that although the Supreme Court did not explain in *Crawford* what it meant for a declarant to "appear for cross-examination," the Court neither overruled nor called into question two earlier decisions that addressed this issue. In the first case, *Delaware v. Fensterer*, 474 U.S. 15, 88 L. Ed. 2d 15, 106 S. Ct. 292 (1985) (*per curiam*), the Court stated that the confrontation clause guarantees " 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " (Emphasis in original.) *Sharp*, 355 Ill. App. 3d at 793, quoting *Fensterer*, 474 U.S. at 20, 88 L. Ed. 2d at 19, 106 S. Ct. at 294. In the second case, *United States v. Owens*, 484 U.S. 554, 98 L. Ed. 2d 951, 108 S. Ct. 838 (1988), the Court held that the confrontation clause is not violated by the admission of an identification statement of a witness who is unable to testify because of memory loss. In so holding, the Court stated that " '[o]rdinarily, a witness is regarded as "subject to cross-examination" when he is placed on the stand, under oath, and responds willingly to questions.' " (Emphasis omitted.) *Sharp*, 355 Ill. App. 3d at 794, quoting *Owens*, 484 U.S. at 561, 98 L. Ed. 2d at 959, 108 S. Ct. at 844. The *Sharp* court pointed

out that our supreme court adopted the analyses of *Fensterer* and *Owens* in *People v. Flores*, 128 Ill. 2d 66 (1989).

Based on the aforementioned case law, the *Sharp* court concluded that the victim "appeared" for cross-examination at the defendant's trial. The *Sharp* court observed that the victim did testify regarding the events leading to and following the alleged crime. *Sharp*, 355 Ill. App. 3d at 795. More importantly, the *Sharp* court held that the key inquiry is whether a declarant of a hearsay statement was present for cross-examination and answered questions asked of her by defense counsel. *Sharp*, 355 Ill. App. 3d at 795. In *Sharp*, not only was the victim present at the defendant's trial, but she answered all of the questions posed to her by defense counsel on cross-examination. Thus, the victim "appeared" for cross-examination at the defendant's trial and the confrontation clause did not bar the admission of the victim's hearsay statements at the defendant's trial. Courts in other jurisdictions have reached similar conclusions. See, *e.g.*, *State v. Carothers*, 692 N.W.2d 544, 549 (S.D. 2005) (concluding that testimonial statements need not be subject to cross-examination at the time they were made if the witness is available and subject to cross-examination at trial); *State v. Gorman*, 854 A.2d 1164, 1178 (Me. 2004) (holding that the confrontation clause was not violated by the admission of the witness's hearsay testimony where the defendant was given the opportunity to cross-examine the witness at his trial); *State v. Tate*, 682 N.W.2d 169, 176 n.1 (Minn. App. 2004) (holding that *Crawford* is not implicated where the declarant of hearsay statement was present at trial and subject to cross-examination); *Crawford v. State*, 139 S.W.3d 462, 464-65 (Tex. App. 2004) (noting that *Crawford* does not bar admission of witness's hearsay statement where the witness testified at the defendant's trial); *People v. Perez*, 82 Cal. App. 4th 760, 766, 98 Cal. Rptr. 2d 522, 526 (2000) (holding that the admission of witness's prior statement did not violate the defendants' right to confront witness against them despite witness's professed inability to recall the crime or her statements to police; although witness's stance narrowed scope of the defendants' cross-examination, the jury was still able to assess witness's demeanor and credibility); *cf. People v. Rios*, 163 Cal. App. 3d 852, 864, 210 Cal. Rptr. 271, 279 (1985) (holding that the admission of a hearsay statement of a witness who refuses to answer any question on direct or cross denies the defendant a meaningful opportunity to cross-examine the witness).

■ In this case, Sergio gave multiple statements to the police, implicating different individuals. The State called Sergio at defendant's trial. Sergio testified that he was incarcerated, that he spoke to the police, that the police informed him of his *Miranda* rights, and that he

"gave some statements" concerning the September 25, 2002, shooting. In addition, Sergio acknowledged providing police with a verbal statement, which the police reduced to writing. He then identified People's exhibit 34 as the first statement he gave to police. When questioned about the specifics of the first statement, Sergio indicated that he could not remember and then refused to testify any further. Sergio persisted in refusing to testify, despite a trial court order that he respond to the State's inquiries. At that point, the court found Sergio in direct contempt of court and delayed any further questioning until Sergio had a chance to consult with his attorney. The State recalled Sergio after he spoke with his attorney. Sergio denied making certain statements to police and then refused to testify any further. However, the trial court made Sergio available to defense counsel for cross-examination. On cross-examination, Sergio admitted that he signed the first statement. He then reviewed the statement and testified that parts of the statement were his, but that he could not recall which ones. Defense counsel then stated that he had "nothing further." Like the victim in *Sharp*, Sergio was present for cross-examination and he answered all of the questions asked of him by defense counsel. Thus, Sergio "appeared" for cross-examination at defendant's trial and the admission of Sergio's second hearsay statement did not implicate *Crawford* or the confrontation clause.

Defendant claims, however, that Sergio was "unavailable" for cross-examination regarding his second statement because direct examination regarding this statement was never attempted. Defendant further asserts that any attempt to cross-examine Sergio regarding the second statement would have been beyond the scope of direct. We disagree. The trial court has wide latitude in determining the permissible scope of cross-examination. *People v. Kegley*, 227 Ill. App. 3d 48, 54 (1992). This is not a case in which the hearsay declarant refused to testify about anything. Here, on direct examination, Sergio acknowledged that he "gave some statements" to police regarding the September 25, 2002, shooting. Since Sergio admitted that he gave the police more than one statement, we cannot agree with the proposition that an attempt by defense counsel to question Sergio regarding the second statement would have been considered beyond the scope of direct. Moreover, the *Sharp* court implicitly rejected an argument similar to that made by defendant in this case. As discussed above, in *Sharp*, the court upheld the admission of the victim's hearsay statement despite the fact that the State was rebuffed in its attempt to question the victim regarding the circumstances of the actual offense, because the victim answered all of defense counsel's questions on cross-examination. *Sharp*, 355 Ill. App. 3d at 795. In this case, Sergio

answered all of defense counsel's questions on cross-examination. Because Sergio "appear[ed] for cross-examination" under *Crawford*, the confrontation clause places "no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 198 n.9, 124 S. Ct. at 1369 n.9. Having determined that *Crawford* does not bar the admission of Sergio's hearsay statements, we turn to whether the statements are admissible under either of the two statutes identified by the trial court.

### B. Section 115—10.1

■ Generally, a party may use a prior inconsistent statement only for purposes of impeachment. *People v. Morgason*, 311 Ill. App. 3d 1005, 1010 (2000). However, section 115—10.1 of the Code (725 ILCS 5/115—10.1 (West 2002)) allows the admission of a witness's prior inconsistent statement as substantive evidence under certain circumstances. *Morgason*, 311 Ill. App. 3d at 1010. Section 115—10.1 provides in relevant part:

> "In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if
>
> (a) the statement is inconsistent with his testimony at the hearing or trial, and
>
> (b) the witness is subject to cross-examination concerning the statement, and
>
> (c) the statement—
>
> (1) was made under oath at a trial, hearing, or other proceeding, or
>
> (2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and
>
> (A) the statement is proved to have been written or signed by the witness, or
>
> (B) the witness acknowledged under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding, or
>
> (C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording." 725 ILCS 5/115—10.1 (West 2002).

As noted above, defendant argues that Sergio's second statement was inadmissible under section 115—10.1 of the Code because Sergio never acknowledged at trial that he made the statement.[2] The State insists that Sergio's second statement was properly admitted under this statu-

---

[2] In announcing its ruling on the admissibility of Sergio's two statements,

tory provision because Sergio's second statement was inconsistent with his testimony at trial, Sergio was subject to cross-examination, and Sergio signed the second statement.

■ To be admissible under section 115—10.1, a statement must be inconsistent with the witness's testimony at trial, the witness must be subject to cross-examination, and the statement must either: (1) have been made under oath at a trial, hearing, or other proceeding; or (2) narrate, describe, or explain an event or condition of which the witness had personal knowledge, and meet at least one of three other requirements. We conclude that Sergio's second statement is inadmissible under section 115—10.1 because it neither was made under oath at a trial, hearing, or other proceeding nor does it narrate, describe, or explain an event or condition of which Sergio had "personal knowledge."

Sergio's second statement was made to police after he was apprehended on a charge unrelated to the September 25, 2002, shooting. Thus, it was clearly not made "under oath at a trial, hearing, or other proceeding." Moreover, Sergio's second statement did not narrate, describe, or explain an event or condition of which Sergio had "personal knowledge."

For a witness to have personal knowledge, the witness must have observed, and not merely heard, the subject matter underlying the statement. *Morgason*, 311 Ill. App. 3d at 1011 (noting that "personal knowledge" excludes statements, including admissions, made to the witness by a third party, where the witness has no firsthand knowledge of the event that is the subject of the statements made by the third party); *People v. Fields*, 285 Ill. App. 3d 1020, 1028 (1996) (holding that it was improper to admit witness's statement regarding the defendant's confession because "[t]he personal knowledge requirement limits the use of out-of-court statements to those events the witness actually observed"); *People v. Morales*, 281 Ill. App. 3d 695, 700 (1996) (holding that the personal-knowledge requirement is not satisfied when the witness merely testifies as to what another claims to have done); *People v. Williams*, 264 Ill. App. 3d 278, 290 (1993); *People v. Saunders*, 220 Ill. App. 3d 647, 658 (1991) (holding that only those portions of statement within personal knowledge of declarant were admissible as substantive evidence under section 115—10.1); *People v. Hastings*, 161 Ill. App. 3d 714, 720 (1987). The rationale for requiring a witness to personally observe the events that are the subject matter

_____

the trial court refers only to a singular statement. We acknowledge that Sergio made two separate statements to police. Our decision concerns only Sergio's second statement.

of his or her comments is that a witness is less likely to repeat another's statement if he or she witnessed the event and knows that the statement is untrue. *Morales*, 281 Ill. App. 3d at 701. In the present case, Sergio's second statement consisted of Sergio's allegation that defendant used a ".380" in the shooting and that defendant admitted that he was the triggerman on September 25, 2002. However, Sergio did not state that he supplied the shooter with the gun or that he personally observed the shooting. Thus, Sergio's second statement does not narrate, describe, or explain an event or condition of which Sergio had personal knowledge, and it is inadmissible under section 115—10.1.

## C. Section 115—10.2

■ The trial court, however, also concluded that Sergio's second statement was admissible under section 115—10.2 of the Code (725 ILCS 5/115—10.2 (West Supp. 2003)). Often referred to as the "residual hearsay statute," section 115—10.2 provides in relevant part:

> "(a) A statement not specifically covered by any other hearsay exception but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule if the declarant is unavailable as defined in subsection (c) and if the court determines that:
>
> (1) the statement is offered as evidence of a material fact; and
>
> (2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
>
> (3) the general purposes of this Section and the interests of justice will best be served by admission of the statement into evidence.
>
> * * *
>
> (c) Unavailability as a witness is limited to the situation in which the declarant persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so." 725 ILCS 5/115—10.2(a), (c) (West Supp. 2003).

According to defendant, Sergio's second statement is inadmissible under section 115—10.2 of the Code because it lacked "circumstantial guarantees of trustworthiness" required for admission under that statutory provision.[3] The State does not address the application of section 115—10.2.

---

[3]Section 115—10.2(a) speaks in terms of "equivalent circumstantial guarantees of trustworthiness." However, this standard has been found to be "comparable" to the federal particularized-guarantees-of-trustworthiness

Unless a witness is "unavailable" as that term is used in section 115—10.2(c), the residual hearsay statute does not apply. *People v. Thomas*, 313 Ill. App. 3d 998, 1003 (2000), *overruled on other grounds*, *Crawford*, 541 U.S. at 59, 158 L. Ed. 2d at 197, 124 S. Ct. at 1369. As set forth in the statute, "unavailability" is a term of art, *i.e.*, it has a specific, limited definition for purposes of the statute. *Thomas*, 313 Ill. App. 3d at 1003. The statute defines unavailability as "the situation in which the declarant persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so." 725 ILCS 5/115—10.2(c) (West Supp. 2003). In this case, Sergio persisted in refusing to answer the questions posed by the State regarding the subject matter of his statements even after the trial court ordered him to do so. Therefore, we conclude that Sergio was "unavailable" as that term is defined in the residual hearsay statute. See *People v. Wilson*, 331 Ill. App. 3d 434, 438-39 (2002) (discussing section 115—10.2 of the Code).[4]

Once unavailability is established, a hearsay statement is admissible under section 115—10.2 only if the statement is trustworthy, material, and probative and serves the interests of justice. 725 ILCS 5/115—10.2(a) (West Supp. 2003); *People v. Brown*, 303 Ill. App. 3d 949, 961 (1999). As noted above, defendant asserts that the second statement that Sergio made to police is inadmissible under section 115—10.2 of the Code because it lacked "circumstantial guarantees of trustworthiness." In support of this position, defendant argues that:

standard referenced in *Roberts*. See *People v. Smith*, 333 Ill. App. 3d 622, 632-33 (2002). Moreover, although *Crawford* rendered the term "circumstantial guarantees of trustworthiness" irrelevant to confrontation clause analysis with respect to testimonial statements, the term remains part of the statutory exception to the hearsay rule set forth in section 115—10.2 of the Code. See *Sharp*, 355 Ill. App. 3d at 796-97 (discussing section 115—10 of the Code); *People v. Miles*, 351 Ill. App. 3d 857, 865 (2004).

[4]In *People v. Campbell*, 309 Ill. App. 3d 423, 433 (1999), the Fourth District stated that "the residual hearsay statute only applies when the declarant is unavailable and, by definition, no opportunity to cross-examine exists." However, as noted previously, the term "unavailability" as used in section 115—10.2 does not carry its colloquial meaning. Rather, it is a term of art that is defined by statute. Moreover, as this case demonstrates, it is possible for a declarant to be "unavailable" for purposes of section 115—10.2, but still be subject to cross-examination. Indeed, the Supreme Court has stated that being "unavailable" and "subject to cross-examination" under the Federal Rules of Evidence are "two characterizations *** made for two entirely different purposes and there is no requirement or expectation that [the terms] should coincide." *Owens*, 484 U.S. at 563-64, 98 L. Ed. 2d at 961, 108 S. Ct. at 845.

(1) Sergio's statement was not made under oath; (2) Sergio did not speak from personal knowledge; (3) Sergio was a "young, gun-hiding and gun-selling gang member with all the baggage that attaches to said status in terms of lack of veracity, minimal truth-telling ability, and moral turpitude"; (4) Sergio implicated defendant in exchange for leniency on criminal charges filed against him; (5) Sergio's statement was not spontaneous; (6) the objective of the police in interviewing Sergio was to obtain information to make an arrest in the shooting; (7) Sergio never acknowledged the statement in court; and (8) Sergio never reaffirmed the statement.

■ Courts in Illinois have applied various tests to determine whether a particular statement bears equivalent circumstantial guarantees of trustworthiness. For instance, in *Brown*, the court considered the following four factors: (1) whether the statement was made spontaneously to a close acquaintance shortly after the crime occurred; (2) whether the statement was corroborated by other evidence; (3) whether the statement was self-incriminating or otherwise against the declarant's interest; and (4) whether there was an adequate opportunity to cross-examine the declarant. *Brown*, 303 Ill. App. 3d at 961, citing *Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973). The *Brown* court pointed out that not all four factors need be present for a statement to be admissible and that the trial court's determination should be based on the "totality of the circumstances." *Brown*, 303 Ill. App. 3d at 961. In *Campbell*, the court endorsed a test based on "the totality of the circumstances surrounding the preparation of the statements." *Campbell*, 309 Ill. App. 3d at 431, citing *Wright*, 497 U.S. at 820-21, 111 L. Ed. 2d at 655-56, 110 S. Ct. at 3149. The *Campbell* court, however, expressly rejected the notion that, in considering the totality of the circumstances, corroborating evidence (a factor cited by the *Brown* court) is relevant. Citing to *Wright*, 497 U.S. at 822, 111 L. Ed. 2d at 657, 110 S. Ct. at 3150, the *Campbell* court explained that the statement must " 'possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial.' " *Campbell*, 309 Ill. App. 3d at 431. More recently, in *Thomas*, the court also endorsed a totality-of-the-circumstances test. *Thomas*, 313 Ill. App. 3d at 1005-06. To assist trial courts in implementing this test, the *Thomas* court set forth a list of eight factors to consider, including: (1) whether the statement was made under oath; (2) whether the declarant spoke from personal knowledge; (3) the identity and background of the declarant and whether the declarant would use the words contained in the statement; (4) the declarant's mental state; (5) the method used to interview the declarant; (6) the circumstances surrounding the mak-

ing of the statement; (7) how the statement was recorded; and (8) whether the declarant reaffirmed his or her statement. *Thomas*, 313 Ill. App. 3d at 1006; see also *People v. Quick*, 308 Ill. App. 3d 474, 481 (1999) (implying use of a totality-of-the-circumstances test). It is within the province of the trial court to determine, based on the totality of the circumstances, whether a particular hearsay statement is trustworthy. *People v. Boyd*, 307 Ill. App. 3d 991, 997 (1999). The trial court's determination will not be disturbed absent an abuse of discretion. *Boyd*, 307 Ill. App. 3d at 997.

■ Examining the totality of the circumstances surrounding Sergio's second statement, we conclude that it bore equivalent circumstantial guarantees of trustworthiness and that the trial court did not abuse its discretion in finding the statement admissible under section 115—10.2 of the Code. Sergio was apprehended by police on a charge unrelated to the shooting. During his first interview with police, Sergio stated that "Juan Vargas" was the person who fired shots at 502 North Butrick and that Sergio had supplied Juan with the gun used in the shooting. The police determined that Juan could not have committed the shooting, because he was in custody at the time. The police approached Sergio with this information, and he gave a second statement. In his second statement, Sergio admitted that it was not Juan who fired the shots at 502 North Butrick but, rather, an individual named "Baqweek." Sergio further stated that, the day after the shooting, "Baqweek" told him that he fired four shots at the residence while riding in a black Lincoln with "Emmanuel" and "Smokey." Sergio told police that he was familiar with the weapon used in the shooting, a ".380," and that the gun always jammed after the third or fourth shot. Sergio stated that "Baqweek" told him that the gun jammed on the night of the shooting. We believe that the trustworthiness of Sergio's second account of the shooting was enhanced by the fact that he had little time to fabricate a story once the police made him aware that his initial account of the shooting could not be accurate. Moreover, as we pointed out above, Sergio was subject to cross-examination, but for whatever reason, defense counsel elected not to question Sergio regarding the second statement he made to police. Admittedly, Sergio did not make the statement under oath or from personal knowledge. However, the statement employs terminology such as "crib," "shorty," and "nation." These are the types of slang a young person would use. The statement also references certain individuals by their nicknames. Finally, we note that while Sergio never reaffirmed the contents of the second statement, he acknowledged during direct examination that he did make "statements" to the police. Thus, we conclude that the trial court did not abuse its

discretion in admitting Sergio's second statement as substantive evidence.

## D. Sufficiency of the Evidence

Defendant also argues that the State failed to prove him guilty beyond a reasonable doubt of aggravated discharge of a firearm. "The State carries the burden of proving beyond a reasonable doubt each element of the charge against the defendant." *People v. Banuelos*, 345 Ill. App. 3d 970, 972 (2004). When reviewing a challenge to the sufficiency of the evidence, we consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Whirl*, 351 Ill. App. 3d 464, 469 (2004). We note that this standard of review applies equally to jury and bench trials. *People v. Arndt*, 351 Ill. App. 3d 505, 512 (2004). "In applying this standard, our role is not to retry the defendant." *Arndt*, 351 Ill. App. 3d at 512-13. "Instead, the trier of fact determines the weight to be given to the testimony of the witnesses, the witnesses' credibility, and the reasonable inferences to be drawn from the evidence." *Arndt*, 351 Ill. App. 3d at 513. "We will not reverse a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the accused's guilt." *People v. Zizzo*, 301 Ill. App. 3d 481, 486 (1998).

■ We initially note that defendant does not expressly specify which of his three convictions he is challenging. However, it appears from his argument that defendant is disputing only the convictions of aggravated discharge of a firearm. A person commits the offense of aggravated discharge of a firearm when he "knowingly or intentionally *** [d]ischarges a firearm at or into a building he or she knows or reasonably should know to be occupied and the firearm is discharged from a place or position outside that building." 720 ILCS 5/24—1.2(a)(1) (West 2002). Normally, aggravated discharge of a firearm is a Class 1 felony. 725 ILCS 5/24—1.2(b) (West 2002). However, when the offense is committed "within 1,000 feet of the real property comprising a school," the offense is enhanced to a Class X felony. 725 ILCS 5/24—1.2(b) (West 2002). In this case, defendant was charged with and convicted of both "simple" aggravated discharge of a firearm and "enhanced" aggravated discharge of a firearm. Defendant does not challenge the element that distinguishes the "enhanced" offense from the "simple" offense, and we do not address that issue in this decision.

■ Defendant first claims that the State failed to prove that he was involved in the September 25, 2002, shooting. Defendant points

out that he provided an alibi for his whereabouts on the night of September 25, 2002. We find that the evidence presented at trial was sufficient to prove beyond a reasonable doubt that defendant was the person who discharged the firearm at 502 North Butrick.

The trial court was presented with inconsistent accounts of the shooting from both Sergio and Gomez. However, we find that after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that defendant was the shooter. *Zizzo*, 301 Ill. App. 3d at 489. As we mentioned earlier, it is for the trier of fact to determine the weight to be given to the testimony of the witnesses, the witnesses' credibility, and the reasonable inferences to be drawn from the evidence. *Arndt*, 351 Ill. App. 3d at 513.

Here, Sergio initially identified the shooter as an individual named "Juan." Gomez, the person driving the car on the night of the shooting, also identified someone named "Juan" as the shooter, but indicated that an individual named "Quick" was also in the car. However, it later became apparent that "Juan" was in custody at the time of the shooting. When Sergio was approached with evidence that "Juan" had an alibi, he identified an individual named "Baqweek" as the shooter. Likewise, Gomez's second account of the shooting implicated defendant. At defendant's trial, the State was unable to effectively examine Sergio regarding the contents of his statement identifying defendant as the shooter. Gomez claimed that he did not know defendant, that he later recanted his identification of defendant as the shooter, and that he learned of defendant's given name from statements given to police by other individuals. However, when confronted with those statements at defendant's trial, Gomez acknowledged that defendant's given name was not mentioned in those statements. The trial court presumably found the testimony of Sergio and Gomez incredible. Based on our reading of the record, we cannot disagree. We note that Sergio's mother, Maria Ruiz, identified defendant as an individual who came to her house to retrieve a gun. Maria also identified defendant by the nickname "Baquick" or "Baqweek."

In addition, although defendant called two witnesses who provided him with an alibi for the night of the shooting, the trier of fact could have found the alibi witnesses' testimony incredible. Both witnesses were related to defendant and neither one approached law enforcement authorities when they learned that their brother had been implicated in the shooting. See *People v. Willoughby*, 250 Ill. App. 3d 699, 719 (1993); *People v. Garza*, 92 Ill. App. 3d 723, 729 (1981) (noting that the familial ties of alibi witnesses may bring their veracity under scrutiny such that their testimony may be rejected).

Defendant also claims that the State failed to show that the house that was shot at was occupied at the time of the shooting. We conclude, however, that the evidence was sufficient to prove beyond a reasonable doubt that the premises fired upon were occupied. The evidence demonstrated that at approximately 9:30 p.m. on Wednesday, September 25, 2002, the police received a report of a shooting at a house located at 502 North Butrick. The evidence further demonstrated that the house fired upon belonged to a member of a rival gang. When the police arrived only about one minute after receiving the report, six people were in the home. After viewing this evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found this essential element of the crime beyond a reasonable doubt. *Whirl*, 351 Ill. App. 3d at 469. Accordingly, we also reject defendant's challenge to the evidence on this basis.

■ Before concluding, we briefly address three matters raised by the State in its brief. First, the State points out that there are some inaccuracies in the mittimus. The mittimus states, incorrectly, that defendant pleaded guilty to counts I and III of the indictment. In fact, defendant was found guilty of counts II and IV of the indictment, following a bench trial. Second, the State asserts, and we agree, that defendant's conviction of and sentence for count IV, aggravated discharge of a firearm, must be vacated because it is a lesser-included offense of count II, aggravated discharge of a firearm within 1,000 feet of real property comprising a school. See *People v. King*, 66 Ill. 2d 551, 566 (1977). Third, the State urges us to remand the cause for sentencing on the unlawful use of a weapon conviction. However, without a copy of the report of proceedings of the sentencing hearing, we cannot determine that the trial court erred in imposing no sentence. Thus, we decline to remand the cause. Nevertheless, pursuant to Supreme Court Rule 615(b)(1) (134 Ill. 2d R. 615(b)(1)), we modify the mittimus to reflect that defendant was found guilty of count II of the indictment, following a bench trial.[5]

## III. CONCLUSION

For the foregoing reasons, we vacate defendant's conviction of and

---

[5]Count II of the indictment originally charged defendant with aggravated discharge of a firearm (enhanced) for shooting at a residence located at "506 North Butrick." The indictment was amended at trial to reflect the correct address, "502 North Butrick."

sentence for aggravated discharge of a firearm but affirm as modified the remainder of the judgment of the circuit court of Lake County.

Affirmed in part as modified and vacated in part.

KAPALA and GILLERAN JOHNSON, JJ., concur.