2020 IL App (1st)162429-U

No. 1-16-2429

Order filed December 3, 2020

Fourth Division

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 20228 |
| | ) | |
| DION BROWN, | ) | Honorable |
| | ) | Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

---

JUSTICE HALL delivered the judgment of the court.
Justice Reyes concurred in the judgment.
Presiding Justice Gordon specially concurred, with opinion.

ORDER

¶ 1     *Held*:   We affirmed defendant's convictions and sentences where his trial counsel was not ineffective for failing to introduce evidence of complainant's alleged prior inconsistent statements from an April 24, 2012, phone conversation between defendant's initial trial counsel and complainant.

¶ 2     Following a bench trial, defendant Dion Brown was convicted of aggravated unlawful use

of a weapon (UUW) and home invasion and sentenced to prison terms of 3 years and 22 years,

respectively, with all sentences to run concurrently. On appeal, defendant contends that his trial counsel was ineffective for failing to locate and call his initial trial counsel to testify about complainant Annmarie Rowe's prior inconsistent statements allegedly made in an April 24, 2012, telephone call. For the following reasons, we affirm.

¶ 3                                BACKGROUND

¶ 4                          A. Trial Proceedings

¶ 5     Defendant was arrested and charged with a total of 24 counts of: home invasion (14), attempted first-degree murder (3), aggravated unlawful discharge of a firearm (1), aggravated domestic battery (1), and aggravated unlawful use of a weapon (UUW) (4), stemming from an incident that occurred at complainant's Chicago home in the early morning hours of October 31, 2011. Assistant Public Defender (APD) Karen Szpajer initially represented defendant, but she retired on December 31, 2014, prior to defendant's trial. When she retired, APD Szpajer gave her case file to her supervisor, who assigned the case to APD Anthony Ruffin in January 2015. However, defendant subsequently retained private counsel, Andrea Bonds, to represent him during the remainder of his trial proceedings.

¶ 6     Defendant's trial commenced on October 5, 2015. During complainant's trial testimony, she revealed that, prior to October 31, 2011, she and defendant were romantically involved, and defendant lived at complainant's home during parts of 2011. While living there, defendant had keys to the home. However, at some point prior to the events at issue, defendant and complainant ended their romantic relationship, and complainant testified that defendant no longer lived with her. She had taken back her keys when the relationship ended. Additionally, although they were no longer together, complainant testified that she still had "some sort of a relationship" with defendant.

¶ 7     Complainant invited defendant to her home on October 30, 2011, after they had both attended an earlier event. By the time defendant arrived, it was 1:00 a.m. on October 31, 2011. Present at the home were complainant, her daughter Lianna, and Lianna's father Jerry Edwards.

¶ 8     When defendant arrived, he was belligerent and caused a scene outside of the home. Defendant was armed with a gun. Because of that, complainant refused to allow him into the home. However, defendant broke the center window of the door, reached inside, and unlocked the door. While this was happening, complainant handed Edwards a knife from the kitchen. Once defendant entered the home, he threatened both complainant and Edwards with the gun, and a confrontation ensued. Eventually, the confrontation ended up in the bathroom, where defendant forced complainant into the bathtub before firing his gun. Complainant, however, was not shot.

¶ 9     Lianna testified that she lived at complainant's home on October 31, 2011. She also testified that defendant was complainant's boyfriend and also lived at complainant's home. Lianna further testified that defendant was banging on the door on the night of the incident, and she went to look through the center window of the front door to find out who it was. Lianna told complainant that defendant was at the front door, but complainant did not tell her to open the door for defendant. Lianna testified while defendant was outside; she showed her father where the knives were in the kitchen. While Lianna did not see defendant break the window on the front door, she did see him enter the home and threaten complainant with a gun. Lianna did not see defendant point the gun at Edwards. At some point, Lianna called the police to come to complainant's home.

¶ 10     Edwards testified that October 30, 2011, was his first time meeting defendant. He was at complainant's home with complainant and Lianna when defendant arrived. Edwards testified that defendant continuously rang the doorbell and banged on the front door. Defendant yelled obscenities outside complainant's home, and Edwards assumed he would be in a "situation," so he

armed himself with a knife. Edwards testified that he did not see how defendant broke in, but he did see defendant enter complainant's home and point a gun at him before pointing it at complainant. Defendant forced complainant into the bathroom and then into the bathtub. When Edwards heard the gun go off in the bathroom, he believed complainant had been shot and subsequently stabbed defendant before pushing him into the bathtub on top of complainant.

¶ 11 When the police arrived, they found complainant, defendant, and Edwards in the bathroom. The officers subsequently recovered a shell casing from the bathroom, along with a gun and a knife. Defendant was subsequently arrested and charged with several offenses, as noted above.

¶ 12 During defendant's case-in-chief, his relative Kim Harris testified that defendant and complainant were dating and that she had recently visited defendant at complainant's home. Harris also testified that defendant had some of his clothes and barber equipment there. However, on cross-examination, Harris admitted that the last time she visited defendant at complainant's home was several weeks prior to October 31, 2011.

¶ 13 Defendant also introduced his vehicle's 2010 registration at complainant's home to support his theory that he lived at complainant's home.

¶ 14 On December 7, 2015, the trial court found defendant guilty of home invasion and aggravated UUW. In finding defendant guilty; the court reasoned that the main issue in the case was whether defendant lived at complainant's residence on October 31, 2011. While noting that Harris testified that she believed defendant lived there, she had last seen him there a few weeks prior to that date. Additionally, although Lianna testified that defendant lived there, the trial court found complainant's testimony more credible that defendant did not live there. Additionally, the trial court noted that defendant did not have keys to enter the home on October 31, 2011. His vehicle registration from 2010 did not prove that his dwelling on October 31, 2011, was

complainant's home either. The trial court concluded that complainant's home was not defendant's residence on October 31, 2011. We note that defendant's conviction under section 12-11 of the home invasion statute (720 ILCS 5/12-11(a)(3) (West 2010)), has since been recodified as 720 ILCS 5/19-6(a)(3) (West 2014).

¶ 15                                     B. Posttrial Proceedings

¶ 16    On January 5, 2016, defendant filed his initial motion for new trial, contending that he was not proven guilty beyond a reasonable doubt.

¶ 17    Defendant sent a letter to the trial court, file-stamped February 18, 2016, in which he stated that his initial trial counsel, APD Szpajer, and another of his cousins were essential to proving that complainant's home was his dwelling. His letter did not specifically allege ineffective assistance of counsel.

¶ 18    Additionally, on February 18, 2016, Attorney Bonds filed an amended motion for reconsideration or a new trial on defendant's behalf. The amended motion raised claims of reasonable doubt, insufficiency of the evidence regarding the firearm, and that Attorney Bonds should have introduced evidence of an April 24, 2012, conversation between APD Szpajer and complainant. The amended motion included an affidavit from APD Szpajer, in which she averred to the contents of the conversation with a person who identified themselves as complainant. According to the affidavit, the person stated that defendant lived with her at the time of his arrest on October 31, 2011; that defendant had keys to her home and did not commit a home invasion; she never heard a gunshot, and that she had a recording of the incident. The person also indicated a willingness to be interviewed.

¶ 19    Attorney Bonds also moved to withdraw as counsel in open court based on defendant's letter, which she construed as the filing of a *Krankel* motion. The trial court denied her motion to

5

withdraw, but stated that it would allow her to argue defendant's amended motion for new trial. The trial court stated if that motion were unsuccessful, it would entertain defendant's *Krankel* motion and allow counsel to renew her motion to withdraw because APD Szpajer's affidavit appears to support her motion.

¶ 20 However, on May 9, 2016, defendant informed the court that he no longer wished to proceed with his ineffective assistance claims and wanted Attorney Bonds to argue the amended motion for new trial, and have his former attorney testify as a witness.

¶ 21 On May 12, 2016, defendant filed a second amended motion for new trial in which he renewed his arguments from the previous motions. He also claimed that Assistant State's Attorney (ASA) Annmarie Sullivan did not inform Attorney Bonds prior to trial that she would not *nolle* the home invasion counts denied him due process. He argued that he was not prepared to defend against those counts when the trial began, and further that there was a witness who could have impeached complainant with prior inconsistent statements.

¶ 22 On May 23, 2016, defendant filed a third amended motion for reconsideration or a new trial. That motion alleged claims of: reasonable doubt, insufficient evidence, newly discovered evidence; due process violations, and ineffective assistance of counsel.

¶ 23 On June 21, 2016, attorney Brandon Brown appeared on defendant's behalf and requested leave of court to argue defendant's ineffective assistance of counsel claim. The trial court granted that motion and allowed Attorney Brown to file an amended motion on defendant's behalf, limited to the issue of an ineffective assistance of counsel claim against Attorney Bonds. Attorney Brown subsequently filed his motion for ineffective assistance of counsel on June 23, 2016. Additionally, on June 24, 2016, Attorney Bonds amended defendant's motion for reconsideration or a new trial,

leaving only his claims of reasonable doubt and insufficiency of the evidence regarding whether he had a gun. The matter was continued to July 21, 2016, for an evidentiary hearing.

¶ 24   On that date, the trial court held an evidentiary hearing on defendant's ineffective assistance claims against Attorney Bonds. Simultaneously, the court also allowed Attorney Bonds to argue the remaining issues raised in defendant's pending motion for reconsideration or a new trial.

¶ 25   Retired APD Szpajer testified that on April 24, 2012, she received a phone call at her office from a person who identified themself as complainant. Prior to this conversation, APD Szpajer had never spoken with complainant. During that call, the person stated that defendant lived with her on October 31, 2011, that defendant had keys to her home; he just did not have them with him that night. The person also stated that she never heard a gun go off and she had an audio recording of the incident as well. APD Szpajer's case file included notes from this conversation. When APD Szpajer retired, she gave the notes to her supervisor.

¶ 26   On cross-examination, retired APD Szpajer testified that she met with Attorney Bonds in February 2016 to discuss defendant's case but did not remember the exact day of their meeting.

¶ 27   Attorney Bonds testified that defendant insisted that she speak with retired APD Szpajer prior to the commencement of his trial on October 5, 2015, because she knew of an April 24, 2012, conversation with complainant. Attorney Bonds testified that she unsuccessfully attempted to locate retired APD Szpajer several times prior to defendant's trial. After defendant's conviction, he again insisted that Attorney Bonds try to locate APD Szpajer, and she successfully located her in January 2016. Attorney Bonds also testified she found retired APD Szpajer's notes concerning the April 24, 2012, conversation with complainant when she and retired APD Szpajer met in February 2016.

¶ 28    Regarding defendant's third amended motion for new trial, Attorney Bonds testified that prior to trial, outside the courtroom, she and ASA Sullivan discussed plea negotiations and the State's readiness for trial. Attorney Bonds stated that ASA Sullivan indicated that she had spoken to complainant and that the case was not a home invasion. Attorney Bonds further stated that ASA Sullivan told her she was going to *nolle* the home invasion counts. Because of this pre-trial conversation, Attorney Bonds was unaware that ASA Sullivan would continue with the home invasion counts until complainant's testimony at trial. Finally, Attorney Bonds testified that had she known that the State would proceed on the home invasion counts, she would have asked for a continuance before trial.

¶ 29    ASA Sullivan confirmed that she spoke with Attorney Bonds outside the courtroom before defendant's trial. She told Attorney Bonds that she could start the trial but was not ready to complete it because she was missing several witnesses. ASA Sullivan testified that she asked if defendant would be willing to begin discussing plea negotiations and that if she were willing to *nolle* the home invasion count, would defendant be willing to continue further plea negotiations. ASA Sullivan further testified that this plea discussion was contingent on complainant's agreement. However, ASA Sullivan stated that complainant was adamant about proceeding on all counts, and she never told Attorney Bonds the case was not a home invasion.

¶ 30    During Attorney Brown's closing argument on the ineffective assistance of counsel motion, he argued that Attorney Bonds extensively cross-examined retired APD Szpajer to determine if she had perjured herself. During the State's response argument, the trial court interjected, stating that it interpreted the State's questioning as an inquiry into whether APD Szpajer was familiar with complainant's voice before the April 24, 2012, conversation, or was that day the first time she ever spoke with complainant. The State agreed that the purpose of their cross-

examination regarding the April 24, 2012, conversation, was to determine how reliable the information was, how reliable the source was, and how did APD Szpajer know it was complainant who called.

¶ 31    At the hearing's conclusion, the trial court denied defendant's motion for ineffective assistance of counsel against Attorney Bonds. The court found that the issue was whether at any time before the beginning of defendant's trial, Attorney Bonds should have done more to follow up on the April 24, 2012, conversation retired APD Szpajer had with "complainant." The trial court found that Attorney Bonds vigorously cross-examined complainant and Lianna, and also introduced evidence that defendant lived at complainant's home through Harris' testimony and the vehicle registration. The trial court stated, "[t]here was the opportunity during the course of the commenced and continued trial to attempt to do further, but [Attorney] Bonds felt that the questions that she had asked during cross-examination, the evidence that she presented was sufficient." The trial court concluded that Attorney Bonds' performance did not fall below an objective standard of reasonableness, and thus defendant did not meet the first prong of the *Strickland* test. The court then denied defendant's ineffective assistance of counsel claim.

¶ 32    The trial court also denied defendant's separate third amended motion for new trial. Defendant was then sentenced to prison terms of 3 years for aggravated UUW and 22 years for home invasion, with all sentences to run concurrently.

¶ 33    Defendant's timely appeal followed.

¶ 34                                ANALYSIS

¶ 35    On appeal, defendant contends that the trial court should have granted his motion for ineffective assistance of counsel because Attorney Bonds failed to: 1) find evidence related to the

April 24, 2012, conversation earlier, and 2) introduce that evidence as a prior inconsistent statement against complainant at trial, to prove that complainant's home was his dwelling.

¶ 36    A defendant's claim of ineffective assistance of counsel is analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Henderson*, 2013 IL 114040, ¶ 11.  To prevail on such a claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant.  *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 10.

¶ 37    To establish deficient performance, the defendant must show that his attorney's performance fell below an objective standard of reasonableness.  *Id*. (citing *People v. Evans*, 209 Ill. 2d 194, 219 (2004)).  Effective counsel refers to competent, not perfect representation.  *Id.*

¶ 38    To establish the second prong of *Strickland*, a defendant must show that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different.  *Id*. at ¶ 11 (citing *People v. Houston*, 229 Ill. 2d 1, 4 (2008)).  A "reasonable probability" has been defined as a probability which would be sufficient to undermine confidence in the outcome of the trial.  *Id.*  A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness.  *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 39    The ultimate question of whether trial counsel's actions support a claim for ineffective assistance of counsel is subject to *de novo* review on appeal. *Max*, 2012 IL App (3d) 110385, ¶ 64.

¶ 40    Here, we find that Attorney Bonds' failure to research and introduce the contents of the April 24, 2012, phone call was not deficient because the contents of that call would not have been admissible to impeach complainant's trial testimony, contrary to defendant's assertions, because they constitute inadmissible hearsay.

¶ 41    The general rule is that hearsay is an out-of-court statement offered in court for the truth of the matter asserted and is inadmissible at trial. Ill. R. Evid. 801(c) (eff. Jan. 1, 2011); *People v. Wilson*, 2012 IL App (1st) 101038, ¶ 38. Section 5/111-10.1 of the Criminal Code (725 ILCS 5/111-10.1 (West 2014)) governs the requirements for the admissibility of a witness' prior inconsistent statements. First, the statement must be inconsistent with the witness' trial testimony and the witness must be available for cross-examination. 725 ILCS 5/111-10.1(a), (b) (West 2014). However, the court must then determine: 1) whether the offered statements were made under oath at a trial, hearing or other proceeding (725 ILCS 5/111-10.1(c)(1) (West 2014)) or 2) whether the statement is one that the witness wrote, signed or acknowledged under oath which narrates, describes or explains events or conditions of which the witness had personal knowledge (725 ILCS 5/111-10.1(c)(2) (West 2014)).

¶ 42    If the witness's testimony complies with section 115-10.1 it may be used as substantive evidence to prove or disprove an element of a crime. *People v. Morgason*, 311 Ill. App. 3d 1005, 1010 (2000). If the witness's testimony does not comply with section 115-10.1 it may not be used as substantive evidence to prove or disprove an element of a crime, but only to impeach another witness. *Morgason*, 311 Ill. App. 3d at 1010. However, the witness offering to testify about another witness's prior inconsistent statement must have personal knowledge of the statements made, or their testimony is inadmissible hearsay. *People v. Howell*, 358 Ill. App. 3d 512, 520 (2005).

¶ 43    Here, APD Szpajer's statements concerning the conversation with complainant fail to meet either requirement of section 111.10-1(c). First, complainant did not make the statements under oath, and APD Szpajer did not have personal knowledge of the contents of the statements. See *People v. Morales*, 281 Ill. App. 3d 695, 701 ( 1996). Additionally, as APD Szpajer had never spoken to complainant before that April 24, 2012, phone call, she was unable to conclusively

identify the caller as complainant; she only testified that the caller identified themselves as complainant. As such, the contents of the April 24, 2012, conversation would have been inadmissible to impeach the complainant's trial testimony. Since the contents of the conversation were inadmissible for impeachment purposes, it follows then that Attorney Bonds cannot be deemed ineffective for failing to investigate or introduce them at defendant's trial. Accordingly, we conclude that defendant has failed to meet the first prong of the *Strickland* test and his claim for ineffective assistance of counsel fails.

¶ 44                                                CONCLUSION

¶ 45    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 46    Affirmed.

¶ 47    PRESIDING JUSTICE GORDON, specially concurring:

¶ 48    I agree with the majority decision in this case, but I must write separately based on my review of the record. In reviewing the testimony of the complainant, I observed that the defense did not inquire on cross-examination whether the complainant had a conversation with defendant's previous attorney, Karen Szpajer. I find the failure to ask that question on cross-examination troublesome. It would have been a foundation question to determine whether the complainant told attorney Szpajer that the defendant was living with her at the time of the offense. Thus, the defense never explored attorney Szpajer's testimony that she talked with the complainant and that the complainant told her defendant was living at her residence. However, this point does not change my concurrence in this matter.